In the Matter of the Estate of Alice M. Ditson, Deceased.

Surrogate's Court, New York County, October 27, 1941.

*Webster & Garside* [*Charles Garside, Henry Cassorte Smith* and *Frederick P. Haas* of counsel], for the petitioner.

*Panken & Panken*, for William C. Gunther, respondent.

*John G. Saxe*, for the Trustees of Columbia University in the City of New York, respondents.

*Sullivan & Cromwell*, for the trustees, etc., of Charles H. Ditson, deceased, respondents.

FOLEY, S. In this accounting proceeding initiated by the executors a claim is asserted against the estate under the objections to the account filed by William C. Gunther. The objections set forth the claim in general terms. The bill of particulars filed by the claimant pursuant to the order of the surrogate reveals the details. The claim is based upon an agreement on the part of the testatrix to bequeath the sum of $50,000 in her will. The bill stated that the agreement between the parties was oral and was made " in the Fall of 1938 " in " New York City." The consideration of the agreement was stated to be " the companionship, devotion and constant attendance upon " the testatrix by the claimant. The significant and important allegations are set forth, (1) that the agreement was oral, and (2) that there " are no letters, memoranda or other documents evidencing or referring " to it.

The executors and one of the legatees move to dismiss the claim upon the ground that the alleged agreement is within the Statute of Frauds and particularly the first and seventh subdivisions of section 31 of the Personal Property Law. The material parts of this section read as follows: " Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: 1. By its terms is not to be performed within one year from the making thereof *or the performance of which is not to be completed before the end of a lifetime;* * * * 7. Is a contract to bequeath property or make a testamentary provision of any kind." The italicized matter in subdivision 1 and the entire context of subdivision 7 were inserted by the Legislature in section 31 by chapter 616 of the Laws of 1933 which became effective on April 29, 1933. It is to be noted that the promise claimed to have been given here was made over five years after the enactment of the amendments and in the year 1938. The alleged agreement, having been admittedly oral and not sustained by any writing signed by the testatrix or her lawful agent, is void. The motion to dismiss is granted and the claim disallowed.

(1) " The provisions of the statute must be read in the light of its history and purpose." (*Matter of Frasch*, 245 N. Y. 174, 180.) The reasons and motives which led the Legislature to make the beneficent changes of 1933 are clear to a student of the authorities dealing with the rules of proof in claims against estates and to the experienced specialist either of the bar or of the bench who has had to meet the presentation of such claims.

The amendments made in 1933 to section 31 of the Personal Property Law were part of a program of progressive legislation introduced by Senator Fearon. A second companion bill created a new section 259-a of the Real Property Law and required that a contract to devise or establish a trust of real property or any interest therein or right with reference thereto was void unless the contract or some note or memorandum thereof was in writing. (Laws of 1933, chap. 574.) The third measure in these general reforms affecting the laws of estates abolished a common-law marriage which had been a frequent basis of fabricated claims against estates. (Dom. Rel. Law, § 11; Laws of 1933, chap. 606.) Its effect was to require every marriage to be performed by a clergyman or public official or to be evidenced by a contract in writing executed and acknowledged with certain defined formalities.

Over a period of many years the Court of Appeals had repeatedly characterized the nature of claims based upon a promise to bequeath

as suspicious and as requiring clear, convincing and satisfactory evidence to sustain them. They came within the general class of claims asserted for the first time after death. " Public policy requires that claims against the estates of the dead should be established by very satisfactory evidence, and the courts should see to it that such estates are fairly protected against unfounded and rapacious raids." (*Matter of Van Slooten* v. *Wheeler*, 140 N. Y. 624, 633.) In a recent decision of the Appellate Division, First Department, in *Matter of Block* (258 App. Div. 342, 346), Mr. Justice GLENNON reviewed these authorities and pointed out that even before the amendments of 1933 the courts laid down the rule that testimony " should be carefully and critically scrutinized by the triers of fact when offered against a dead person's estate." (Citing *Ward* v. *N. Y. Life Ins. Co.*, 225 N. Y. 314; *Matter of McMillan*, 218 id. 64; *Taylor* v. *Higgs*, 202 id. 65; *Rosseau* v. *Rouss*, 180 id. 116; *Hamlin* v. *Stevens*, 177 id. 39.) He quoted Judge VANN in *Hamlin* v. *Stevens* (*supra*): " Contracts of the character in question have become so frequent in recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them, and in enforcing them, when established, by specific performance. Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises.  *  *  * Such contracts should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses."

Cases which have considered the rule of strict scrutiny in alleged promises to bequeath are *Taylor* v. *Higgs* (*supra*); *Rosseau* v. *Rouss* (*supra*); *Hamlin* v. *Stevens* (*supra*); *Holt* v. *Tuite* (188 N. Y. 17); *Wallace* v. *Wallace* (216 id. 28); *McKeon* v. *Van Slyck* (223 id. 392); *Roberge* v. *Bonner* (185 id. 265); *Frankenberger* v. *Schneller* (258 id. 270); *Smith* v. *Burhyte* (197 App. Div. 725).

(2) When examined in the light of this historical background of these new amendments to the Statute of Frauds, the special legislative purposes in the alteration of the first subdivision of the section and the enactment of the seventh subdivision become clear. Each of these amendments is independent of the other and each deals respectively with two entirely different groups of transactions. The first subdivision plainly was intended to cover agreements made to take effect at or after death and to require such agreements to be in writing. Agreements to bequeath or devise or for other testamentary objects were excluded from it. Claims falling within the class covered by the first subdivision would include agreements

to pay for services actually rendered by the promisee to the promisor, where payment, in whole or in part, was postponed beyond the lifetime of the promisor. Again, the promisor may have borrowed moneys from the promisee and agreed to make payment at or after death. In both of these classes of cases, where the claim might otherwise be barred by the Statute of Limitations, it would be saved necessarily from the operation of the statute by the fixation of the agreed date of payment in a writing. Subdivision 1 was not intended in any way to include agreements to bequeath or devise by will. That phase of the reform was exclusively covered by the enactment of the provisions of subdivision 7 of the section. Its context emphasizes the expression of the legislative intent in this regard. It reads that an agreement is void unless supported by a writing if the agreement is " a contract to bequeath property or make a testamentary provision of any kind."

In the adoption of these amendments the Legislature undoubtedly aimed to correct the serious omission in the law by abolishing oral promises to bequeath or devise.

To the trier of the facts, who has been presented with many of these forms of claims, the discomforting feeling arises that general expectations of becoming the object of a testator's bounty often ripen into a contract in the mind of the promisee only, after the testator's death.

(3) It is further urged here on behalf of the claimant that the agreement was taken out of the Statute of Frauds by his performance. That conclusion is overruled as without foundation in law. Even if performance by one party took the agreement out of the statute, which it does not, the character of the claim as stated in the bill of particulars is such that the services alleged to have been performed would not constitute performance. (*Burns* v. *McCormick*, 233 N. Y. 230, *infra; Frankenberger* v. *Schneller*, *supra*.) The bill of particulars states that the consideration for the agreement was " the companionship, devotion and constant attendance " of the claimant, William C. Gunther. On its face the bill is insufficient in law to constitute the basis of a valid claim. At the time of the making of the alleged agreement the decedent was a widow of advanced years. It is undisputed that the claimant was at most a close friend of the decedent. He was not an employee. The agreement is stated to have been made in the fall of 1938. Mrs. Ditson died on April 30, 1940. She left an estate of approximately $300,000. The claimant alleges that he was promised by will a legacy of $50,000. His compensation thus for the period of approximately eighteen months would have been at the rate of $33,000 a year. He rendered no services which might be the legal basis for an award of compensation.

Acts performed out of natural love and affection or out of courtesy or solicitous care of one friend for another do not constitute a consideration. (*Gilman* v. *Hunnewell*, 191 App. Div. 908.) They are presumed to have been rendered gratuitously. As was stated by Judge, now Chief Judge, LEHMAN: " The inference of an implied contract to pay the reasonable value of services rendered which may arise from the mere rendition and acceptance of the service cannot be drawn where because of the relationship of the parties, it is natural that such service should be rendered without expectation of pay." (*Robinson* v. *Munn*, 238 N. Y. 40, 43.) In some cases extraordinary services have been asserted as a basis for compensation beyond that regularly paid by the decedent. Such services may have been accompanied by a hope based upon a mere expression of an intention and not the assumption of a binding obligation to remember a person in the will of the decedent. Where no legacy has been provided in a valid will, recovery against the estate " cannot be based on disappointed expectations or even on expression of intention, in the form of a promise which was not carried out." (LEHMAN, J., *Frankenberger* v. *Schneller*, *supra*, 273.) The performance of the services claimed to have been rendered here is a futility as the basis of any legal right.

One of the leading cases on the question of performance in connection with the application of the Statute of Frauds to contracts to provide by will is *Burns* v. *McCormick* (*supra*). The opinion was written by Judge CARDOZO. The claim was based upon a promise to devise, which was not evidenced by any memorandum or deed or will. The plaintiff sought specific performance. The defense was the Statute of Frauds under section 259 of the Real Property Law. The facts in that case were much stronger than those asserted here for the plaintiffs claimed that they had given up their home and boarded with the decedent and cared for him during the rest of his life. Judge CARDOZO wrote: " We think the defense must be upheld. Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance ' unequivocally referable ' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing. ' An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance ' (*Woolley* v. *Stewart*, 222 N. Y. 347, 351). What is done must itself supply the key to what is promised. It is not enough that what is promised may

give significance to what is done. The housekeeper who abandons other prospects of establishment in life and renders service without pay upon the oral promise of her employer to give her a life estate in land, must find her remedy in an action to recover the value of the service." Final disposition of the action was made by a direction for dismissal of the complaint.

(4) While the surrogate under his interpretation of legislative purpose has held that the seventh subdivision of section 31 of the Personal Property Law exclusively applies to the facts in the present proceeding, a discussion of the effect of the principles applicable to the first subdivision may be of some value, particularly to show that the performance by one party cannot lift an oral agreement out of the statute.

Contracts which fall within the purview of the first subdivision are held to be void unless in writing, and " nothing short of full performance by both parties will take the contract out of the operation of the statute." (*Tyler* v. *Windels*, 186 App. Div. 698, 700; affd., 227 N. Y. 589; *Wahl* v. *Barnum*, 116 id. 87, 98: *Matter of Douglas*, 169 Misc. 716; affd., 256 App. Div. 1070.) " An oral contract, invalid by the Statute of Frauds, because by its terms it is not to be performed within one year from the making thereof, is not validated by part performance (*Billington* v. *Cahill*, 51 Hun, 132.) To hold that part performance is performance would be a nullification of the statute." (*Wahl* v. *Barnum, supra.*) The doctrine of part performance is a creation of equity. It is not recognized in actions at law (5 Pomeroy on Equity Jurisprudence [2d ed.], § 2240.) It applies exclusively to contracts for the sale of land. (2 Williston on Contracts [Rev. ed.], § 533. See, also, Restatement, Law of Contracts, § 197: *Walter* v. *Hoffman*, 267 N. Y. 365, 368.) In contracts for the sale of goods which are within the terms of the statute (Pers. Prop. Law, § 85), the Legislature has expressly provided the acts of part performance which will render such contracts enforcible.

(5) The principles enunciated by the courts in respect of the first subdivision of section 31 of the Personal Property Law apply with even greater force to the seventh subdivision governing contracts to bequeath property or make a testamentary provision of any kind. Such agreements seldom become the subject of litigation until after the death of the party sought to be charged.

It is the opinion of the surrogate that the mandate of the Legislature, contained in the seventh subdivision, may not be nullified by proof of performance by one of the parties under the applicable authorities cited above. (*Tyler* v. *Windels, supra; Wahl* v. *Barnum, supra; Matter of Douglas, supra.*) Freedom to construe a statute

" is not freedom to amend." (Cardozo, J., in *Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341, 345.) Under the law as it existed prior to the effective date of the new statute it seemed incomprehensible that while our Statute of Wills surrounded the execution of a testamentary instrument with strict requirements as to execution, publication and attestation, yet it was possible for a person to assert and even establish an agreement of the decedent to leave the entire estate or part of it to the promisee without a scrap of paper to evidence the agreement or obligation. Under the new law that is no longer possible. The note or memorandum under the amendments requires less formality than the essentials surrounding the execution of a will. Nevertheless, the general purpose of each instrument is the same. In the latter case, we have what is called our " Statute of Wills." In the new class of cases we have a " statute for agreements to make a will." No matter how clearly the wishes of a testator may be expressed, if the testamentary paper lacks the full statutory requirements, it is void. The Court of Appeals has frequently reiterated the rule that the Statute of Wills must be strictly construed. It is the intention of the Legislature and not that of the maker that governs. " We have held that this statute should not be defeated by judicial construction or frittered away by exceptions." (*Matter of Whitney*, 153 N. Y. 259, 264, citing *Sisters of Charity* v. *Kelly*, 67 id. 409, 416, and *Matter of O' Neil*, 91 id. 516, 520.) For similar reasons an agreement to make any form of testamentary provision must be proved by a writing under the requirements of the section. No device or substitute or subterfuge can nullify the statutory mandate that a paper evidencing it must be signed by the promisor or his duly authorized agent. Complete performance of the contract by both parties requires the rendition of services or other basis of valuable consideration on the part of the promisee and the actual execution of a valid and effective last will by the promisor containing the agreed legacy or devise. Where each party has thus performed, an action to enforce the agreement is unnecessary.

If full performance by the promisee only were to be regarded as a sufficient mode of dispensing with a writing as to agreements within the terms of subdivision 7, that portion of the statute would in effect be repealed by judicial fiat.

A similar conclusion was reached in the interpretation of a statute almost identical in terms with our own (Cal. Civ. Code, § 1624, subd. 7; Laws of Cal., 1905, p. 611) by the California District Court of Appeal. It said: " * * * and if, in adding this new subdivision to these code sections, the lawmakers did not intend to put a quietus upon all such cases where the agreement

sought to be enforced rests in parol, regardless of performance on the part of the promisee, then we utterly fail to perceive what was intended to be accomplished by these most important and salutary code amendments." (*Trout* v. *Ogilvie*, 41 Cal. App. 167; 182 P. 333, 336.) Of this decision it has been said that " the court's proposition that the amendment to section 1624 would thus be deprived of any real significance, since such contracts would be left exactly where they were before the amendment, is a weighty one; and in connection with the point that the whole doctrine of part performance is an anomaly, which ought to be held within narrow limits, it seems conclusive." (Roscoe Pound, The Progress of the Law, 1918–1919, 33 Harv. L. Rev. 929, 935.) This decision was cited with approval by the Supreme Court of California in a recent case (*Rotea* v. *Izuel*, 14 Cal. [2d] 605; 95 P. [2d] 927), and the principle reaffirmed that an oral agreement to make compensation out of decedent's estate is invalid under the statute, and that no recovery could be based upon such an agreement.

It follows as a matter of law that the alleged oral agreement was void under the statute, that it was based upon no consideration and that performance of any kind of services cannot save it.

(Other directions included in the original decision of the surrogate omitted because not of general interest and because of their subordinate importance.)

Submit decree on notice settling the account accordingly.