Milton H. Rubin, Appellant, *v.* Irving Trust Company, as Executor of Harold Rubin, Deceased, et al., Respondents.

Argued February 24, 1953; decided May 28, 1953.

*Simon H. Rifkind, Martin Kleinbard, Edward N. Costikyan* and *George B. Gelman* for appellant. I. The law of Florida governs the validity of the agreement. (*Youssoupoff* v. *Widener*, 246 N. Y. 174; *Matter of Gantt* [*Hurtado & Cia.*], 297 N. Y. 433; *Swift & Co.* v. *Bankers Trust Co.*, 280 N. Y. 135; *Union Nat. Bank of Chicago* v. *Chapman*, 169 N. Y. 538; *Goetschius* v. *Brightman*, 245 N. Y. 186; *Fisher* v. *Fisher*, 250 N. Y. 313; *Benton* v. *Safe Deposit Bank of Pottsville*, 255 N. Y. 260; *United States Mtge. & Trust Co.* v. *Ruggles*, 258 N. Y. 32; *Bitterman* v. *Schulman*, 265 App. Div. 486; *Scudder* v. *Union National Bank*, 91 U. S. 406; *Hartford Ind. Co.* v. *Delta Co.*, 292 U. S. 143; *New York Life Ins. Co.* v. *Dodge*, 246 U. S. 357; *Home Ins. Co.* v. *Dick*, 281 U. S. 397; *Order of Travelers* v. *Wolfe*, 331 U. S. 586; *Van Voorhis* v. *Brintnall*, 86 N. Y. 18; *Weissman* v. *Banque De Bruxelles*, 254 N. Y. 488; *Moultrie* v. *Hunt*, 23 N. Y. 394.) II. The New York Statute of Frauds does not bar enforcement of the agreement in New York. (*Hartford Ind. Co.* v. *Delta Co.*, 292 U. S. 143; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284; *Fisher* v. *Fisher*, 250 N. Y. 313; *Goetschius* v. *Brightman*, 245 N. Y. 186; *Western Mass. Mut. Fire Ins. Co.* v. *Hilton*, 42 App. Div. 52; *Houghtaling* v. *Ball & Chapin*, 19 Mo. 84, 20 Mo. 563; *Canale & Co.* v. *Pauly & Pauly Cheese Co.*, 155 Wis. 541; *Oakes* v. *Chicago Fire Brick Co.*, 388 Ill. 474; *Miller* v. *Wilson*, 146 Ill. 523; *Halloran* v. *Schmidt Brewing Co.*, 137 Minn. 141; *Russell* v. *Societe Anonyme des Etablissements Aeroxon*, 268 N. Y. 173; *Wilson* v. *Lewiston Mill Co.*,

150 N. Y. 314; *Goldstein* v. *Scott,* 76 App. Div. 78.) III. New York public policy does not preclude enforcement of the agreement in New York. (*Broderick* v. *Rosner,* 294 U. S. 629; *Hughes* v. *Fetter,* 341 U. S. 609; *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99; *Crane* v. *Powell,* 139 N. Y. 379; *Matthews* v. *Matthews,* 154 N. Y. 288; *Wilcox Silver Plate Co.* v. *Green,* 9 Hun 347, 72 N. Y. 17; *Marie* v. *Garrison,* 13 Abb. N. C. 210; *Emery* v. *Burbank,* 163 Mass. 326; *Herzog* v. *Stern,* 264 N. Y. 379; *Johnson* v. *Mutual Life Ins. Co.,* 180 Mass. 407; *Henning* v. *Hill,* 80 Ind. App. 363; *Canale & Co.* v. *Pauly & Pauly Cheese Co.,* 155 Wis. 541; *Lams* v. *Smith,* 36 Del. 477; *Oakes* v. *Chicago Fire Brick Co.,* 388 Ill. 474; *Halloran* v. *Schmidt Brewing Co.,* 137 Minn. 141.) IV. The issue of decedent's domicile cannot be decided on a motion for summary judgment. (*Matter of Blankford,* 241 N. Y. 180; *Matter of Harkness,* 183 App. Div. 396; *Matter of Bourne,* 181 Misc. 238; *Curry* v. *Mackenzie,* 239 N. Y. 267; *Piedmont Hotel Co.* v. *Nettleton Co.,* 263 N. Y. 25; *Schulman* v. *Cornman,* 221 App. Div. 170; *Cromwell* v. *County of Sac,* 94 U. S. 351; *Marine Tr. Corp.* v. *Switzerland Gen. Ins. Co.,* 263 N. Y. 139; *Cuyler Realty Co.* v. *Teneo Co.,* 196 App. Div. 440, 233 N. Y. 647; *Bolton* v. *Schriever,* 135 N. Y. 65; *Flatauer* v. *Loser,* 211 N. Y. 15; *Matter of Schell,* 272 App. Div. 210.) V. Section 85 of the New York Personal Property Law is inapplicable. (*Invincible Parlor Frame Co.* v. *Elegant Leather Goods,* 187 Misc. 454, 272 App. Div. 795; *McKeon* v. *Van Slyck,* 223 N. Y. 392; *Grundt* v. *Shenk,* 222 App. Div. 82, 248 N. Y. 602; *Hammond* v. *Hammond,* 264 App. Div. 322; *Ralph* v. *Cronk,* 266 N. Y. 428; *Hieronymus* v. *Voges,* 276 App. Div. 1096; *Doyle* v. *Gleason,* 152 Misc. 641, 244 App. Div. 52.) VI. Special Term correctly held that whether or not appellant is estopped is a question of fact. (*Oliver* v. *Wells,* 254 N. Y. 451; *Beetson* v. *Stoops,* 186 N. Y. 456; *Lee* v. *Tower,* 124 N. Y. 370; *Newcomb* v. *La Roe,* 160 App. Div. 819, 218 N. Y. 682; *Matter of Campbell,* 171 Misc. 750, 261 App. Div. 899.)

*James N. Vaughan* for Irving Trust Company and another, respondents. I. The oral testamentary promise made in Florida by decedent in 1940 cannot be enforced in New York because it contravenes our Statute of Frauds. II. The question whether the New York Statute of Frauds applies to a contract made in

a foreign State has not been decided by the Court of Appeals. (*Reilly* v. *Steinhart,* 217 N. Y. 549; *Franklin Sugar Refining Co.* v. *Lipowicz,* 220 App. Div. 160, 247 N. Y. 465; *Russell* v. *Societe Anonyme des Etablissements Aeroxon,* 268 N. Y. 173.) III. In England the Statute of Frauds, from which our own statute is essentially derived, is settled to be procedural and not substantive in a conflict of laws case. (*Watson* v. *Wharam,* 2 T. R. 80, 100 E. R. 44; *Chater* v. *Beckett,* 7 T. R. 201, 101 E. R. 931; *Carrington* v. *Roots,* 2 M. & W. 284, 150 E. R. 748; *Leroux* v. *Brown,* 12 C. B. 801, 138 E. R. 1119.) IV. The New York Statute of Frauds, now to be found in sections 31 and 85 of the Personal Property Law, section 113 of the Decedent Estate Law, and sections 242 and 259 of the Real Property Law, was taken from the English statute and is intrinsically procedural, evidentiary and remedial in nature. (*Shindler* v. *Houston,* 1 N. Y. 261; *Dykers* v. *Townsend,* 24 N. Y. 57; *Justice* v. *Lang,* 42 N. Y. 493; *Dung* v. *Parker,* 52 N. Y. 494; *Argus Co.* v. *Mayor of City of Albany,* 55 N. Y. 495; *Crane* v. *Powell,* 139 N. Y. 379; *Hutchins* v. *Van Vechten,* 140 N. Y. 115; *Matthews* v. *Matthews,* 154 N. Y. 288.) V. No well-considered decision favorable to a substantive view of our Statute of Frauds. is contained in the reports of this State. VI. The law of the forum governs matters of remedy, procedure and evidence. Since the New York Statute of Frauds is remedial, procedural and evidentiary and makes no contract illegal, it is applicable in the present case. (*Matter of Gantt* [*Hurtado & Cia.*], 297 N. Y. 433; *Reilly* v. *Steinhart,* 217 N. Y. 549; *Pritchard* v. *Norton,* 106 U. S. 124.) VII. Learned writers on the question of whether the Statute of Frauds goes to the remedy and evidence and procedure, rather than to substance, on the whole favor the determination that the statute is of the former character. VIII. Appellant provides no convincing reason to support his claim that the New York Statute of Frauds is substantive. IX. *Emery* v. *Burbank* (163 Mass. 326), the principal case factually in point, should be approved and its principle assimilated to the law of New York.

*Henry I. Fillman,* respondent in person. I. In view of the decisions in *Bayreuther* v. *Reinisch* (264 App. Div. 138, affd. 290 N. Y. 553) and *Matter of Levin* (276 App. Div. 739, 277

App. Div. 758, affd. 302 N. Y. 535), it is the unquestioned public policy of this State " to outlaw " an oral claim such as forms the basis of plaintiff's action. (*Glaser* v. *Glaser,* 276 N. Y. 296; *Burns* v. *McCormick,* 233 N. Y. 230; *Matter of Block,* 258 App. Div. 342; *Matter of Douglas,* 169 Misc. 716.) II. Assuming for the discussion, but without conceding, that the alleged agreement was made in Florida on April 8, 1940, and is valid there, nevertheless, since it runs counter to the public policy of New York, it will not be enforced by New York courts. (*Rousillon* v. *Rousillon,* 14 Ch. D. 351; *Bond* v. *Hume,* 243 U. S. 15; *Straus & Co.* v. *Canadian Pacific Ry. Co.,* 254 N. Y. 407; *Dickinson* v. *Edwards,* 77 N. Y. 573; *Emery* v. *Burbank,* 163 Mass. 326; *Johnson* v. *Mutual Life Ins. Co.,* 180 Mass. 407; *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99.) III. Since the alleged agreement is in legal effect one for the sale of shares of stock far exceeding $50 in value, section 85 of the Personal Property Law adopted from section 4 of the English Sale of Goods Act, which has been construed by the English authorities as dealing with remedies and a part of the *lex fori,* prevents the New York courts from enforcing the agreement. (*Burns* v. *McCormick,* 233 N. Y. 230; *Canute* v. *Minor,* 232 App. Div. 325, 258 N. Y. 558; *Parsell* v. *Stryker,* 41 N. Y. 480; *Hamilton* v. *Thirston,* 93 Md. 213; *Maloney* v. *Maloney,* 258 Ky. 567; *Agar* v. *Orda,* 144 Misc. 149, 239 App. Div. 827, 264 N. Y. 248; *Morris* v. *Baron & Co.,* [1918] A. C. 1; *Sampson* v. *Pels Co.,* 199 App. Div. 854; *300 West End Ave. Corp.* v. *Warner,* 250 N. Y. 221; *Manufacturer's Light & Heat Co.* v. *Lamp,* 269 Pa. 517.) IV. Since plaintiff exercised the option granted him by the will to purchase from the executor all of decedent's shares of American Silk Mills, Inc., plaintiff not only consented to the last will but is also estopped from maintaining his action for specific performance. (*Garrison* v. *Marie,* 7 N. Y. Civ. Pro. Rep. 113; *Beetson* v. *Stoops,* 186 N. Y. 456; *Havens* v. *Sackett,* 15 N. Y. 365; *Oliver* v. *Wells,* 254 N. Y. 451; *Myers* v. *Ross,* 10 F. Supp. 409; *Burns* v. *First Nat. Bank of Joliet,* 304 Ill. 292; *Lloyd* v. *State Treasurer,* 401 Ill. 520; *Genet* v. *Delaware & Hudson Canal Co.,* 170 N. Y. 278; *Svenska Taendsticks Fabrik Aktiebolaget* v. *Bankers Trust Co.,* 268 N. Y. 73.) V. Plaintiff's contention that his so-called performance takes the alleged agreement out of the

Statute of Frauds is not supported by the authorities. (*Burns v. McCormick,* 233 N. Y. 230; *Sackheim v. Berger,* 273 App. Div. 873; *Invincible Parlor Frame Co.* v. *Elegant Leather Goods,* 187 Misc. 454, 272 App. Div. 795; *Bayreuther* v. *Reinisch,* 264 App. Div. 138, 290 N. Y. 553; *Meltzer* v. *Koenigsberg,* 99 N. Y. S. 2d 143, 277 App. Div. 1050, 302 N. Y. 523.) VI. No issue of fact as to decedent's New York domicile was raised. (*Irving Trust Co.* v. *Orvis,* 139 Misc. 670; *Engl* v. *Ætna Life Ins. Co.,* 139 F. 2d 469.)

*Robert Szold* and *Milton Altman* for Rita R. Lowe and others, respondents. I. The courts of New York will not enforce an oral promise to bequeath made by a New York domiciliary. They will apply New York law. (*Bolton* v. *Schriever,* 135 N. Y. 65.) II. *Emery* v. *Burbank* (163 Mass. 326), squarely in point, correctly sets forth the predominant interest of the domiciliary State in the case of an oral promise to make a testamentary provision. (*Levi* v. *Murrell,* 63 F. 2d 670, 290 U. S. 638; *Ohlendiek* v. *Schuler,* 30 F. 2d 5; *Buck* v. *Meyer,* 195 Mo. App. 287.) III. That the law of the last domicile governs the disposition of decedents' estates is a general principle of law universally established. (*Moultrie* v. *Hunt,* 23 N. Y. 394; *Matter of Gifford,* 279 N. Y. 470.) IV. Domicile constitutes a fundamental rule. (*Baker* v. *Baker Eccles & Company,* 242 U. S. 394; *Bishop* v. *Bishop,* 257 N. Y. 40.) V. The issue herein relates to the disposition of a New York estate. Therefore, subdivision 7 of section 31 of the Personal Property Law of New York must be applied. (*Matter of Ditson,* 177 Misc. 648; *Caruth* v. *Caruth,.* 128 Iowa 121.) VI. The rule prescribed in subdivision 7 for devolution of property should not be whittled away. (*Matter of Van Slooten* v. *Wheeler,* 140 N. Y. 624; *Rosseau* v. *Rouss,* 180 N. Y. 116; *Bayreuther* v. *Reinisch,* 264 App. Div. 138, 290 N. Y. 553.) VII. Plaintiff's arguments are without merit. VIII. The court below was correct in holding that, as a matter of law, decedent was domiciled in New York. IX. The question of decedent's domicile relates to the date of death. X. The probate in the Surrogate's Court constitutes a conclusive finding of fact that decedent died domiciled in New York. (*Kennedy* v. *Ryall,* 67 N. Y. 379; *Matter of Daggett,* 255 N. Y. 243; *Matter of Gifford,* 279 N. Y.

470; *Bolton* v. *Schriever*, 135 N. Y. 65; *O'Donoghue* v. *Boies*, 159 N. Y. 87; *Flatauer* v. *Loser*, 211 N. Y. 15; *Matter of Schell*, 272 App. Div. 210; *Lapiedra* v. *American Sur. Co.*, 247 N. Y. 25; *O'Connor* v. *Huggins*, 113 N. Y. 511; *Bumstead* v. *Read*, 31 Barb. 661; *Matter of Hernandez*, 172 App. Div. 467; *Matter of Gardner*, 260 App. Div. 132; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Marine Tr. Corp.* v. *Switzerland Gen. Ins. Co.*, 263 N. Y. 139; *Reich* v. *Cochran*, 151 N. Y. 122; *Fairview-Chase Corp.* v. *Scharf*, 254 N. Y. 55; *Brown* v. *Mayor of City of N. Y.*, 66 N. Y. 385; *Last Chance Min. Co.* v. *Tyler Min. Co.*, 157 U. S. 683.) XI. The allegations in the complaint that decedent died a resident of the county and State of New York and that letters testamentary under decedent's will were granted by the New York County Surrogate's Court are binding upon plaintiff. XII. Substantial New York State estate taxes were paid by the executor on the basis that decedent was a New York domiciliary. Plaintiff is estopped to assert the contrary. (*Matter of Trowbridge*, 266 N. Y. 283.) XIII. On all the facts and taking as true all allegations in plaintiff's affidavit, only one legal result is permissible, i.e., decedent was domiciled in New York. (*Matter of Trowbridge*, 266 N. Y. 283; *Matter of Blankford*, 241 N. Y. 180; *Texas* v. *Florida*, 306 U. S. 398; *Matter of Newcomb*, 192 N. Y. 238; *Dupuy* v. *Wurtz*, 53 N. Y. 556; *Isham* v. *Gibbons*, 1 Bradf. 69.) XIV. Testator was domiciled in New York on April 8, 1940, as well as at the date of death. (*Emery* v. *Burbank*, 163 Mass. 326.) XV. New York law must be applied to the contract. (*Jones* v. *Metropolitan Life Ins. Co.*, 158 Misc. 466; *Zwirn* v. *Galento*, 288 N. Y. 428; *Hall* v. *Cordell*, 142 U. S. 116; *Seeman* v. *Phila. Warehouse Co.*, 274 U. S. 403; *Hoopeston Canning Co.* v. *Pink*, 288 N. Y. 291, 318 U. S. 313; *Wilson* v. *Lewiston Mill Co.*, 150 N. Y. 314; *Jansson* v. *Swedish American Line*, 185 F. 2d 212; *Barber Co.* v. *Hughes*, 223 Ind. 570; *Bayreuther* v. *Reinisch*, 264 App. Div. 138, 290 N. Y. 553.)

CONWAY, J. There is presented for our decision the question whether an oral contract not to alter a will made in Florida, where it is alleged the contract was a valid one, is enforcible in this State despite the fact that if made here it would be violative of section 31 of the Personal Property Law.

The complaint alleges in substance that testator executed a will in October, 1938, bequeathing to plaintiff, his brother, shares of stock in a New Jersey "family" corporation; that in April, 1940, plaintiff and testator entered into an oral contract in Florida whereby testator promised not to change his will without plaintiff's consent in return for plaintiff's promise to purchase stock in the corporation held by their brother and stock held in trust for their three sisters; that under the then existing law of Florida that contract was valid and enforcible; that plaintiff purchased the stock as agreed; that testator, with plaintiff's consent, executed a new will and a codicil thereto in 1940 bequeathing to plaintiff the bulk of his stock upon condition that certain payments be made out of that bequest; that in 1946 and without plaintiff's consent testator executed a new will leaving the bulk of his stock to persons other than plaintiff with instructions to his executor to sell the stock to plaintiff upon receipt from him of a reasonable offer; that in 1947 and without plaintiff's consent testator executed a new will bequeathing all his stock to persons other than plaintiff with similar instructions to his executor with reference to a sale of the stock to plaintiff.

It is further alleged that testator died a resident of the county of New York and possessed of the stock; that letters testamentary have been issued by the Surrogate's Court of New York County to the defendant trust company as executor under the will last mentioned, and that there exists no adequate remedy at law. Plaintiff prays for judgment directing specific performance of the oral contract and for other relief.

The defendant executor interposed an answer alleging that testator was a New York domiciliary from the time when the contract is alleged to have been made until his death in 1949; that the oral agreement is void by reason of section 31 of the Personal Property Law since it is a contract to bequeath or to make a testamentary disposition, was not to be performed within one year nor before the end of a lifetime and, further, that by delay in asserting this claim and by reason of his offer to purchase the stock from the executor in accordance with the provisions of the will admitted to probate plaintiff is barred from recovery.

Defendants' motions for summary judgment pursuant to rule 113 of the Rules of Civil Practice were denied at Special Term. The Appellate Division reversed, the majority being of the opinion that subdivision 7 of section 31 of the Personal Property Law proclaims a public policy of this State with respect to contracts made by New York domiciliaries and therefore applies to contracts by such persons wherever made.

Subdivision 7 of section 31 of the Personal Property Law provides:

" § 31. *Agreements required to be in writing.* Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking;   *   *   *

" 7. Is a contract to bequeath property or make a testamentary provision of any kind;   *   *   *."

For the purposes of that statute there can be no difference between a contract " to bequeath property or make a testamentary provision " and a contract to refrain from altering an existing will, for wills are ineffective until the death of the testator.   (See *Matter of Levin,* 302 N. Y. 535.)

We shall consider first the applicability of our Statute of Frauds to the contract in question.

Whether or not an oral contract, valid and enforcible in the jurisdiction where made, is subject to the Statute of Frauds of a jurisdiction where an action is brought upon the contract is a problem not yet settled in this State.   It has been the subject of much debate by the commentators and the decisions on the point are in " irreconcilable conflict ".   (2 Wharton, Conflict of Laws [3d ed.], p. 1454.)   This court has recognized the existence of the problem and the conflict of authority but has thus far found it unnecessary to resolve it.   (*Reilly* v. *Steinhart,* 217 N. Y. 549, 553; *Franklin Sugar Refining Co.* v. *Lipowicz,* 247 N. Y. 465, 469–471; *Russell* v. *Societe Anonyme des Etablissements Aeroxon,* 268 N. Y. 173, 180–181.)

In the case last cited we said per CRANE, Ch. J. (p. 181): " Most of the authorities arrive at their conclusion as to the law applicable, *i.e., lex loci* or *lex fori,* by first determining whether the statute is substantive or procedural and evidentiary.   If it is

substantive then the law of the place of contracting applies, and though the forum has its own Statute of Frauds, the latter would not be applicable. If it is procedural or evidentiary then the law of the forum applies though the contract was valid and enforceable where made. * * * " In the *Franklin* case (*supra,* pp. 469–470) the characterization of the statute as substantive or as procedural was recognized as being determinative of the problem. But the principle, concerned as it is with nebulous legal conclusions, does little more than restate the problem.

However, as we view the case, we need not decide whether the statute is substantive or procedural. If it be the latter, there is no problem for the law of the forum surely would apply. If it be the former, we must conclude that it is expressive of a deeply rooted policy of the forum with respect to the bequeathing of property or making testamentary provisions by its domiciliaries to which the ordinary rules of choice of law and comity must give way. (See *Shannon* v. *Irving Trust Co.,* 275 N. Y. 95, 102–103; *Herzog* v. *Stern,* 264 N. Y. 379, 384–385; *Straus & Co.* v. *Canadian Pacific Ry. Co.,* 254 N. Y. 407, 414; *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 110–111.) Indeed the statute may even be regarded as having a dual nature — both substantive and procedural. (See *Emery* v. *Burbank,* 163 Mass. 326, discussed *infra.*)

It should be realized at the outset that we are not dealing with the ordinary contract. A contract to make or to refrain from altering a will amounts for all practical purposes to a testamentary disposition. If enforcible, it is little different from a will and, as often as not, will result in the complete subversion or nullification of a will executed in accordance with the stringent requirements surrounding the making of such an instrument (Decedent Estate Law, § 21). The nature of the contract is such that actions for its enforcement are instituted after the death of the promisor and consequently the difficulty of disputing the claim is enormous. Since claims based upon such oral contracts are frequently asserted and are unusually suspect (see *Hamlin* v. *Stevens,* 177 N. Y. 39, 47–48, 50; *Matter of Ditson,* 177 Misc. 648, 649–650, FOLEY, S.) they tend to hamper the expeditious and orderly administration of estates. It is true

that an action upon an ordinary contract may be maintained to enforce an obligation of a person since deceased but that is not the usual case — it occurs by chance and not because of the nature of the contract. True it is, also, that the enforcement of the ordinary oral contract against an executor, like the enforcement of the claims of any of the decedent's creditors, affects a reduction of the assets available for distribution under a decedent's will. But the enforcement of such claims does not entail an alteration or negation of a will as does the enforcement of a contract of the kind in question. To enforce an oral contract to make or to refrain from altering a will is to write or rewrite a will for a decedent in complete disregard of the strict and salutary requirements of the Statute of Wills (Decedent Estate Law, § 21) and the dangers of injustice are as great as those which militate against the allowance of oral wills.

The power of testamentation is " not a natural or inherent right, but one which the state can grant or withhold in its discretion." (*Matter of Delano,* 176 N. Y. 486, 491, affd. *sub nom. Chanler* v. *Kelsey,* 205 U. S. 466; and *Matter of Watson,* 226 N. Y. 384, 395–396, affd. *sub nom. Watson* v. *State Comptroller,* 254 U. S. 122.) No authority need be cited for the settled proposition that the law of the testator's final domicile is the law of the will and controls the devolution of estates at least insofar as personalty is concerned. The State is vitally interested in preserving the integrity of the cherished privilege which it has conferred and of the estates of which its courts have assumed jurisdiction. It is concerned with the welfare of the decedent's dependents (e.g., Decedent Estate Law, §§ 17, 18) and creditors. The interest of the State in matters affecting the testamentary dispositions of its domiciliaries is much more than casual.

By our statutes, it is required that wills be in writing and subscribed by the testator with certain formalities therein provided. (Decedent Estate Law, § 21.) Nuncupative wills are of no effect save those made in the presence of witnesses by persons in actual military or naval service (Decedent Estate Law, § 16). It is now provided that a will executed in accordance with the requirements of the place of execution or of the testator's domicile has the same force and effect as if executed in the manner prescribed by our laws and such a will may be

admitted to probate in this State *provided, however, that it be in writing and subscribed by the testator.* (Decedent Estate Law, §§ 22-a, 23.)

Several things are apparent from the foregoing:

It is clear that the enforcement of oral contracts to make or refrain from altering a will is completely inconsistent with and imperils the policy of this State relating to testamentary dispositions.

It is clear, also, that in reaching our decision here we are not to be guided by the same considerations as we would in determining the applicability of our Statutes of Frauds to the ordinary or commercial contract. Considerations, otherwise of paramount importance, assume small significance here — e.g., that a contract, a bilateral thing, should be controlled by principles of law best suited to the effectuation of the expectations of both parties and that enforcibility ought not be dependent upon the voluntary and hence unpredictable movement of one party thereto. (See *Youssoupoff* v. *Widener,* 246 N. Y. 174, 191.)

It is clear, too, that we are not here concerned with the ordinary Statutes of Frauds and what we now decide is not necessarily dispositive of cases arising under them since the agreement in question was related to the wish of a testator " to bequeath property or make a testamentary provision of any [some] kind ". (See 32 Yale L. J. 311, 336, 337 [The Statute of Frauds and The Conflict of Laws by Professor Lorenzen].)

In *Emery* v. *Burbank* (163 Mass. 326, *supra,* HOLMES, J.) plaintiff and testatrix entered into an oral agreement in Maine, where both resided, testatrix undertaking to bequeath property to plaintiff in return for plaintiff's promise to care for her and go with her to live in Massachusetts. Plaintiff performed as agreed, testatrix did not. The agreement apparently was enforcible where made but a Massachusetts statute provided that: " No agreement * * * [to make a will or give a devise or legacy by will] shall be binding, unless such agreement is in writing." The statute was held to apply. Since the case is so closely in point and the opinion well states the view to which we have come we quote from it at length (pp. 328–330):

" * * * *It is possible* * * * *that a statute should affect both validity and remedy by express words, and this being so,*

*it is possible that words which in terms speak only of one should carry with them an implication also as to the other.* \* \* \*

" The words of the statute before us seem \* \* \* to deal with the validity and form of the contract \* \* \*. If taken literally, they are not satisfied by a written memorandum of the contract; the contract itself must be made in writing. \* \* \* But we are of opinion that the statute ought not to be limited to its operation on the form of contracts made in this State. The generality of the words alone, ' no agreement,' is not conclusive. But *the statute evidently embodies a fundamental policy.* The ground, of course, is the prevention of fraud and perjury, which are deemed likely to be practised without this safeguard. The nature of the contract is such that it naturally would be performed or sued upon at the domicil of the promisor. *If the policy of Massachusetts makes void an oral contract of this sort made within the State, the same policy forbids that Massachusetts testators should be sued here upon such contracts without written evidence, wherever they are made.* \* \* \*

" The law of the testator's domicil is the law of the will. A contract to make a will means an effectual will, and therefore a will good by the law of the domicil. In a sense, the place of performance, as well as the forum for a suit in case of breach, is the domicil. \* \* \* *[T]he final domicil is more concerned in the policy to be insisted on than any other jurisdiction, and justifies it in framing its rules accordingly.* There would be no question to be argued if the law were in terms a rule of evidence. It is equally open for a State to declare, upon the same considerations which dictate a rule of evidence, that a contract must have certain form if it is to be enforced against its inhabitants in its courts." (Emphasis supplied.)

It is of some significance that our statute is more susceptible to a procedural or evidentiary characterization than that in the *Emery* case (*supra*). It is true that the declaration in subdivision 7 of section 31 of the Personal Property Law that the contract shall be " void," if taken at face value, bears a substantive connotation. But as will shortly appear the use of the word " void " may not be regarded as at all decisive. Section 31 provides only that the contract *or some note or memorandum of it,* viz., *evidence* of a contemporaneously or even *previously* made

agreement, must be in writing whereas the Massachusetts statute required that the contract *itself* be in writing which surely was more substantive or constitutive than procedural or evidentiary. From Justice HOLMES' opinion (*supra*) and from Wigmore on Evidence (Vol. 9, 3d ed., § 2454), it appears that the difference has been regarded as significant.

The historic background of subdivision 7 of section 31 lends some support to the view that it was enacted in order to provide a much needed, rigid standard of proof or rule of evidence in actions upon testamentary contracts of this kind. And if it be thought that that background fails to establish the procedural character of the statute, it at least shows that it was enacted in order to effectuate, implement and supplement the policy requiring testamentary dispositions to be in writing, which undeniably is a policy imbedded in our law, and justifies us in concluding that it must be applied here.

In *Hamlin* v. *Stevens* (177 N. Y. 39, 47–48, 50, *supra*), Judge VANN wrote:

" Contracts of the character in question have become so frequent in recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them * * *. Such contracts are easily fabricated and hard to disprove * * *.

" * * · * Such contracts are dangerous. They threaten the security of estates and throw doubt upon the power of a man to do what he wills with his own. * * * Such contracts should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses. Unless they are established clearly by satisfactory proofs and are equitable, specific performance should not be decreed. We wish to be emphatic * * * for we are impressed with the danger, and aim to protect the community from the spoliation of dead men's estates by proof of such contracts through parol evidence given by interested witnesses."

Time and again prior to the enactment of subdivision 7 of section 31 in 1933, appellate courts found it necessary to state that the testimony in cases of this kind must be subjected to the strictest scrutiny and the claim established by the " clear-

est and most convincing evidence." (*Rosseau* v. *Rouss,* 180 N. Y. 116, 121; *Matter of Block,* 258 App. Div. 342, 346–347, and *Matter of Ditson,* 177 Misc. 648, 649–650, *supra,* and cases cited therein.) A strict rule of proof was required and it is not unreasonable to conclude that the statute was intended to supply that need and was intended only as a rule of evidence.

The remarks of Surrogate FOLEY, Chairman of the Decedent Estate Commission which recommended the enactment of subdivision 7 of section 31, are worthy of note and were quoted by the majority below (New York State Bar. Assn. Bulletin, Vol 5., June, 1933, p. 284) : " They [Personal Property Law, § 31 subds. 1, 7] correct a serious omission in the law by requiring such agreements to be in writing. It seems almost incomprehensible that the law threw around the execution of the will certain strict requirements * * * and yet under the former practice it was possible for a person to assert and even establish an agreement to leave the entire estate to the promisee without a scrap of paper to evidence the agreement or obligation. Claims of this kind have been subject to severe criticism and stricture in the decisions of the Court of Appeals. These new amendments will not only prevent the bringing of an action unless the agreement is in writing, but will also abolish the present system which has led to unfounded assertions of such claims against estates in the hope of realizing a settlement, because of the delay in distribution to the real beneficiaries named in the formally executed will." (See to similar effect *Matter of Ditson, supra,* FOLEY, S.)

Plaintiff urges that the statute cannot be regarded as declaring a public policy of the State since it is a matter of defense which may be waived by the failure to plead it. The fact that it must be pleaded equally supports the view that it goes not to the substance of the contract but to the mode of proving it. " When the statute is set up as a defense, the objection to any other mode of proof * * * is to be deemed as made in advance * * *." (*Crane* v. *Powell,* 139 N. Y. 379, 385.) Of course, if the statute is procedural — whether or not it is expressive of our public policy — it is fatal to plaintiff's action.

Plaintiff points to the fact that the statute declares contracts " void " whereas section 85 of the Personal Property Law

provides that certain oral contracts. " shall not be enforceable by action ". The implication is that if this were a statute relating to procedure the latter wording, would have been employed. But that is not determinative for this court has time and again spoken of Statutes of Frauds which declare contracts " void " as enunciating a rule of evidence or establishing a mode of proof. (See *Argus Co.* v. *Mayor of City of Albany*, 55 N. Y. 495, 501; *Crane* v. *Powell*, 139 N. Y. 379, 384–385, *supra*; *300 West End Ave. Corp.* v. *Warner*, 250 N. Y. 221, 226, 228; and see *Wikiosco, Inc.*, v. *Proller*, 276 App. Div. 239, 240.) And we have said that such statutes do not render contracts " illegal or a mere nullity ". (*McKenna* v. *Meehan*, 248 N. Y. 206, 212; see, also, *Matthews* v. *Matthews*, 154 N. Y. 288.) These authorities are sufficient to indicate that any argument, which goes no deeper than the phraseology, to the effect that the statute in question is only substantive, is unavailing and to indicate that no violence is done by attributing to it a dual character — as suggested in *Emery* v. *Burbank* (*supra*), or attributing to it a character solely procedural and evidentiary.

But as indicated earlier, even if the statute be substantive solely, our policy requires that it be applied. In this respect it is suggested by plaintiff, although it is not urged at length, that the Federal due process clause may require that our policy be subordinated to the law of the place of contracting. Plaintiff quotes as follows from *Hartford Ind. Co.* v. *Delta Co.* (292 U. S. 143, 149): " * * * A state may limit or prohibit the making of certain contracts within its own territory * * * but it cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made. * * * Nor may it in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy solely upon the ground that one of the parties is its own citizen. * * * " However, at page 150 of the opinion, it is made abundantly clear that the Supreme Court was addressing itself to efforts by a State to apply the policy of the forum so as to nullify rights lawfully vested elsewhere when " the interest of the forum has but slight connection with the substance of the contract

obligations." (See, also, *Griffin* v. *McCoach*, 313 U. S. 498, 506.)

There is yet another approach to the problem which tends to dictate the same result as all the foregoing: the " center of gravity " theory of conflicts of laws, discussed by the majority below. Under that theory the law of the State which has the most significant contacts with the matter in dispute will be applied. (See Harper, Policy Bases of the Conflicts of Laws, 56 Yale L. J. 1155, 1161–1167; *Vanston Committee* v. *Green,* 329 U. S. 156, 161–162; *Jansson* v. *Swedish American Line,* 185 F. 2d 212, 218–219; *Jones* v. *Metropolitan Life Ins. Co.,* 158 Misc. 466, 468, 469–470.) It would seem that that approach was used to some extent by Justice Holmes in the *Emery* case (*supra*).

Here we have a promise by a New York domiciliary not to alter a will, and a claim based upon that promise against an estate being administered under the supervision of a New York court. In a sense New York is the place of performance of the contract for it called for the retention in existence of an effectual will — a will valid by the law of the testator's domicile, New York. On the other hand, Florida's only contact appears to be that that was the place of contracting and, that being so, there exists the possibility that the parties contracted, if indeed they did, with the law of that jurisdiction in mind. What has gone before is sufficient to demonstrate that New York's contacts are most significant as well as more numerous.

Finally, plaintiff contends that the decision below is incompatible with the case of *Shea* v. *Shea* (294 N. Y. 909). We there held valid a common-law marriage contracted by residents of this State in a State where such marriages are valid. Section 11 of the Domestic Relations Law, which in the absence of express words was held to have no extraterritorial effect, provides: " No marriage shall be valid unless solemnized by " various designated civil or ecclesiastical authorities or by written contract signed by both parties and at least two witnesses.

Little need be said to indicate that vastly different legal and policy considerations were there involved. The right to contract marriage is a natural right, not a legislatively conferred privilege. Contracts of marriage valid where made are almost universally recognized elsewhere, save those which outrage our most fundamental concepts. The question was one of status —

and uncertitude as to that has grave criminal and moral ramifications — e.g., the possible bastardization of issue and existence of a meretricious relationship.

There remains the question of testator's domicile. Domicile, of course, is a question of fact and not of law (*Matter of Newcomb*, 192 N. Y. 238, 250; *Dupuy* v. *Wurtz*, 53 N. Y. 556, 562) unless the undisputed facts admit of but one inference (*Matter of Trowbridge*, 266 N. Y. 283). Upon their motion for summary judgment it was necessary for the defendants to establish prima facie, by documentary evidence or official record, the facts upon which their claim that testator died a New York domiciliary was founded. That requirement met, it was incumbent upon plaintiff to show facts, by affidavit or other proof, sufficient to raise an issue with respect to the verity and conclusiveness of the documentary evidence or official records produced by defendants (Rules Civ. Prac., rule 113). The ultimate question is whether plaintiff has shown the existence of a triable fact issue. If the issue claimed to exist is not " genuine, but feigned, and  *  *  * there is in truth nothing to be tried " summary judgment is properly granted (*Curry* v. *Mackenzie*, 239 N. Y. 267, 270).

It is conceded that testator was a New York domiciliary until 1938. Our view of the record is that plaintiff has failed to show the existence of a triable issue as to any change thereafter. The majority of the Appellate Division were of the opinion, and we are in accord with it, that " the record is clear that [testator] traveled and sojourned elsewhere on account of his health without acquiring a new domicile, which is necessary in order to effect a change ". (280 App. Div. 348, 354.)

The judgment appealed from should be affirmed, with costs.

DESMOND, J. (concurring). The ground for affirmance, relied upon by Judge CONWAY in his able opinion, is a valid and sufficient reason for that result. However, I think this court should go further and, by stating another and equally valid ground for affirmance, decide and set at rest a question of law which has been left undecided, in this State, for decades. We should not, of course, reach out, on any appeal, for questions unnecessary to decision. But the primary function of this court is to settle and state the law of this State for the information and guidance

of its citizens, and, unless we do so when occasion arises, a question like this can remain unanswered forever.

The important question of law to which, as I think, we should now give answer, is this: will the courts of this State enforce an oral agreement which has been made in another State where such oral agreements are valid, but which is of a kind that, under the New York Statute of Frauds, must, for enforcibility, be in writing?

I think that our answer to that question should be " no ", and that we should declare the New York rule to be as set forth in the Restatement of Conflict of Laws (§ 602, comment a) as follows: " If the statute of frauds of the forum requires a written agreement as a condition of bringing action on a contract of a certain sort, no action can be maintained on a foreign oral agreement even if it complies with the law of the place of contracting." That rule would derive, naturally and logically, from the settled New York rule that our Statute of Frauds is not substantive but procedural, that it makes oral agreements not void but unenforcible, and that it is, therefore, a rule of evidence for the New York courts (see *Justice* v. *Lang*, 42 N. Y. 493, 500, 501; *Crane* v. *Powell*, 139 N. Y. 379, 384).

Lewis, Ch. J., Dye, Fuld and Froessel, JJ., concur with Conway, J.; Desmond, J., concurs in separate opinion; Loughran, Ch. J., deceased.

Judgment affirmed.