Joseph A. Cox, S.
This decedent died on July 6, 1954. In 1958 the objectant Edmond Pauker asserted a claim against the estate in the total amount of $78,736. Of this total, $10,000 was claimed as a compromise figure orally agreed upon by the decedent and the claimant on December 11, 1953 as payment for past services rendered by the claimant. The balance was claimed pursuant to an oral contract under which it is asserted the decedent agreed to pay the objectant $1,000 a week from December 11, 1953 for services as a manager, agent and representative, and additional sums for providing the decedent with office accommodations and the services of the objectant’s office employees. These claims have been twice reduced and at this time the claims are limited to the sum of $10,000 for the services prior to December 11,1953 and $1,000 a week for managerial services during the period of 29 weeks beginning December 11, 1953 and terminating July 5, 1954, the day preceding the decedent’s death. The claims as now asserted total $39,000. The claims were made originally by Edmond Pauker, who filed objections to the account of the administratrix c. t. a., but at the date of the hearing of the objections the objectant was represented by his committee. *579 Edmond Paulcer died subsequent to the hearings and the representative of his estate has been substituted as the objectant in this proceeding.
The decedent had very little by way of funds or immediately realizable assets in 1953. He did have certain exclusive rights to plays of George Bernard Shaw and, after the decedent’s death, the tremendous success of the musical production “My Fair Lady,” based upon Shaw’s “ Pygmalion,” brought very substantial revenue to the decedent’s estate but, unfortunately, none of this financial benefit was realized in his lifetime. The decedent also contemplated a dramatic production based upon the life of Ghandi but this failed of accomplishment. Concededly at the time the alleged oral contracts with Mr. Pauker were made the decedent was unable to pay either $10,000 in a single payment or $1,000 a week and, according to the testimony offered in support of the claims, the sum of $10,000 was to be paid from whatever funds Mr. Paulcer thereafter collected for the decedent. There is no proof that any of the moneys reaching the decedent’s estate were obtained through the efforts of Mr. Pauker.
The proof of the alleged oral contracts rested solely upon the testimony of the claimant’s son who, at the date of the hearing, was cocommittee of the claimant. This testimony related to alleged conversations with the decedent in 1953 and, insofar as any agreement obligating this estate is concerned, the testimony is not supported by any memorandum, book entry, payment on account or demand for payment made at any time prior to the decedent’s death. The proof as to the extent of the purported services would not warrant payments of the amounts allegedly agreed upon and it seems particularly strange that, in view of the claimant’s purported prior experiences with the decedent, the claimant would accept an oral promise to pay for unrecompensed past services as well as future services. The oddity that the decedent would commit himself to pay a manager $1,000 weekly while the decedent lived in a single room for which he paid $35 weekly does not preclude the possibility that the oral contracts were made, but would strongly indicate that, if the contracts were made, neither the decedent nor the claimant was acting in a very realistic manner. In these circumstances, the ordinary man would regard this type of agreement as wholly contingent upon future prospects which neither the decedent nor the claimant ever realized.
A claim asserted for the first time after the death of the alleged debtor must be carefully and critically scrutinized and, to protect estates from unfounded claims, very satisfactory evidence is required (Matter of Block, 258 App. Div. 342, 346; *580 Ward v. New York Life Ins. Co., 225 N. Y. 314, 322; Matter of Van Alstyne, 207 N. Y. 298, 308; Hamlin v. Stevens, 177 N. Y. 39; Rubin v. Irving Trust Co., 305 N. Y. 288, 302-303). This does not mean that proof of such a claim imposes a special burden upon the claimant but, in this instance, proof of the claims requires full acceptance of the testimony of a single witness without corroboratory evidence and under circumstances which cast grave doubts upon the accuracy of this witness’ recollection. The claimant has not established the alleged oral contracts upon which the claims rest and the objections to the account are dismissed. The renewed motion to strike testimony is denied. Submit decree on notice.
(Rehearing)
This motion is made after decision for the purpose of reopening the hearing to permit the objectant to introduce additional evidence. It is claimed that the court in referring to the inadequacy of the proof was in error for the reason that, although certain proof was not offered, it was available to the objectant. This unusual argument refers to certain diary entries purportedly made in the handwriting of the original claimant and which purportedly support his claim that he entered into an oral contract with the decedent. Overlooking the conceded fact that this material was available at the time of trial and was referred to obliquely at the trial, the decisive factor is that the diary entries would not constitute competent evidence. Such entries would be self-serving statements of the same nature as oral testimony of the claimant and it is beyond dispute that section 347 of the Civil Practice Act would render the claimant incompetent as a witness. Neither can it be said that such entries would qualify under section 374-a of the Civil Practice Act inasmuch as the claimant was under no duty to make such a record (Shea v. McKeon, 264 App. Div. 573) and the writings would be no more than the equivalent of the claimant’s oral testimony in support of his claim (Matter of De Simone, 151 Misc. 87; Matter of Magan, N. Y. L. J., April 13,1962, p. 13, col. 3).
It is further asserted that a witness who was placed on the stand, out of order, but withdrawn before testifying could provide corroboration that was lacking at the trial. Admittedly this witness was within the control of the movant and it was counsel’s decision not to use her. There is here no claim of newly discovered evidence and the situation appears to be that a stratagem adopted for trial purposes having proved unsuccessful, the movant would like a second opportunity to try the claim. While this court is most lenient in affording parties *581 opportunities to obtain proof and witnesses and has granted continuances for such purpose, it is apparent that parties may not be permitted to submit their cases for final decision and, in the event of an adverse result, be allowed a second chance to do a better job. No persuasive argument is presented as to why the court was not advised at the hearing as to the significance of this omitted testimony and neither is there any showing as to why competent counsel did not present this testimony at the proper time. The court is not convinced that a reopening of the hearing would serve a proper purpose. The motion is denied.