In the Matter of the Accounting of PAUL H. KENNEDY, as Administrator of the Estate of JEAN TAYLOR, Deceased.

Surrogate's Court, Broome County, March 30, 1954.

*James B. Gitlitz* and *Charles D. Keane* for administrator, petitioner.

*Charles R. Stewart* for Marguerite J. Buckmaster, respondent.

*Willard E. Pierce, Jr.,* for Detroit Trust Company, as executor of Don F. Kennedy, deceased, and another, respondents.

*Ray T. Hackett* and *John Harbachuk* for Mary K. Kennedy, respondent.

PAGE, S. Before instituting this proceeding for the judicial settlement of his account, the administrator had had presented to him a claim by Marguerite J. Buckmaster against the estate of said deceased in the amount of $15,000. This claim, having been rejected by the administrator, was tried and the question presently to be determined is as to what, if any, portion thereof is allowable.

The basis of this claim is for alleged work, labor and services consisting of the claimant's, during the last fifteen months of decedent's lifetime, having acted as her housekeeper and " companion ". It is conceded that the claimant, the divorced former wife of one of the deceased's nephews, was paid for her services in this position at the rate of $12 per week, with board and room, during all of the above-mentioned period of time. It appears that, although blind, the deceased was able to take care of herself pretty well so that the services rendered by the claimant, although conceded to have been excellent, were of quite a light and nonexacting nature.

The present case is somewhat different than the vast majority of claims of its kind which are so frequently made against decedents' estates in that it is contended by the claimant that the $12 per week received by her was in the nature of a drawing account to enable her to meet minimum personal expenses week by week, and that, upon some sort of understanding between her employer and herself, she was to be more adequately compensated by either having a home for life at the residence of the deceased, or a share in her estate, or both. As to the element of a life use of decedent's residence, the evidence is wholly insufficient. As to the claim in relation to a legacy in this decedent's estate of one fourth thereof, it was shown by disinterested witnesses that the deceased told them of her intention to that effect. But she died intestate.

However, whatever may be the theory or contention of the claimant in this connection is not very material, for, in any event, as far as disclosed by any evidence, she was not to receive any compensation except the weekly wages of $12 during all the lifetime of deceased. Thus it appears that the additional forms of compensation which she is claiming herein are pursuant to an alleged parol agreement which was either a mutual understanding, " the performance of which is not to be completed before the end of a lifetime ", or, " a contract to bequeath property or make a testamentary provision ", and, therefore, in either event, void by reason of subdivision " 1 " or " 7 " of section 31 of the Personal Property Law.

There remains to be considered whether or not the claimant may be entitled to some recovery on the basis of a *quantum meruit*. In cases of this species generally it appears to be, at least tentatively, presumed that, although there is no contract, express or inferable from the facts, the rendition of services, or conferment of a benefit in some other manner, in any instance

wherein there is not such a close relationship between the parties in question as to give rise to an inference that the benefit conferred was not mutually intended to be compensated, creates an obligation on the part of the recipient thereof to pay the reasonable value thereof. (*Matter of Mason,* 134 Misc. 902, 904; *Matter of Hughes,* 229 App. Div. 614, 615, both citing and following a leading case of long standing, *Moore* v. *Moore,* 3 Abb. Ct. App. 303, 21 How. Prac. 211.) In cases where a contract cannot be shown, the compensation payable is the reasonable value of the services. Thus, insofar as a recovery of reasonable value is concerned, it becomes immaterial whether or not there was any contract properly so called to pay the reasonable value of the benefit extended, for what is often called a " quasi-contract " to do so will be implied as a matter of law, to the extent of a *quantum meruit.*

An interesting contention presented by counsel for the administrator is that, the applicable provision of section 31 of the Personal Property Law (subd. 7), having voided the alleged oral agreement to bequeath a legacy, likewise, also bars the award of any *quantum meruit.* It is true that the instant case does involve the issue as to whether, in an instance dealing with an alleged contract (as distinguished from quasi-contract), unenforcible because of a provision of the Statute of Frauds, even though the claimant has proceeded on the theory of an express contract, her claim, to the limited extent of a *quantum meruit,* may be recognized and allowed. Cases, generally of this type, dealing with the above-mentioned statutory provisions of section 31 of the Personal Property Law (subds. " 1 ", " 7 ") and cited in this connection are *Matter of Quigley* (179 Misc. 210); *Matter of Ditson* (177 Misc. 648); *Matter of Block* (258 App. Div. 342); *Laing* v. *Mallory* (277 App. Div. 824); *Meltzer* v. *Koenigsberg* (99 N. Y. S. 2d 143, affd. 277 App. Div. 1050, affd. 302 N. Y. 523); *Bayreuther* v. *Reinisch* (264 App. Div. 138, affd. 290 N. Y. 553); *Matter of Lettner* (112 N. Y. S. 2d 540); *Matter of Douglas* (169 Misc. 716, affd. 256 App. Div. 1070) and *Kenny* v. *Brieger* (196 Misc. 85).

Strict as all these cases are in applying these Statute of Frauds provisions against permitting " raids " on decedents' estates, some of them intimating that alleged agreements of the kind with which we are concerned herein must comply with the statute or be totally rejected, none of them, except *Matter of Quigley (supra),* specifically passed on the question as to whether or not a *quantum meruit* might be awarded as a measure of justice to the claimant.

The question as to whether or not the existence of an invalid (because of Personal Property Law, § 31) contract, and the claim having been tried on that theory, bars consideration of a *quantum meruit,* in a mild form, is presented in the instant case. Readily imaginable would be more extreme cases in which a determination absolutely adverse to a claimant would produce a shockingly unjust result. Imagine a case wherein, by means of emphatically expressed and frequently repeated promises, an unscrupulous and designing promisor had taken advantage of someone, more simple-minded and ignorant of the law, who had served him faithfully over a long period of time and at great expense to himself; or consider a case wherein the promisor, though having no cunning design and intending to act in good faith in his relation to the promisee, was overtaken by the grim reaper, as appears to have happened in the present case, before he got around to making his will, or having executed a will, upon his death, it turned out to be inadmissible to probate, or one lost or destroyed, or one suppressed by someone. Situations like any one of these indicate that, if a claimant is able to overcome the handicap of section 347 of the Civil Practice Act, though his claim in the full amount of what the alleged promised legacy, if it had been duly bequeathed, would have been is effectively barred by section 31 of the Personal Property Law, such a claim ought, nevertheless, to be recognized and allowed to some extent by way of an award of a *quantum meruit.* In my opinion the statute relied upon by the administrator does not necessarily compel its construction and application as being so absolute as to prohibit any consideration whatsoever of a *quantum meruit* as the preventative of an, otherwise, resulting unjust enrichment of others at the expense of a claimant. For a somewhat analogous case to this effect, see *Hubbard* v. *Hubbard* (151 App. Div. 174).

But, in the present case, it is further contended that, entirely aside from the effect of section 31 of the Personal Property Law, a legally implied contract to pay the reasonable value of services rendered by this claimant would be unwarranted because of the fact that she was paid the not too flagrantly inadequate wage of $12 per week, which was the full amount of all that was contemplated between the parties insofar as the agreement between them was valid.

Although a total disallowance of the present claim might not be so " shockingly unjust " as it would be in some similar cases, yet it seems fairly apparent that such a determination herein

would result in some unjust enrichment of the distributees of this decedent's estate. It is deducible from the testimony as well as common knowledge that the prevailing rate of wages for housekeepers in the vicinity of the claimant's employment as such during the years 1951 and 1952, with board and room furnished by the employer, ranged from $15 to $35 per week. Considering all of the circumstances surrounding the period of employment of claimant, it is apparent that the *quantum meruit* to which she may be entitled would not be at the highest prevailing rate during the period in question. Being obliged to determine some definite amount, it, reasonably, should be about half or slightly more than half of the maximum, and the figure which, under the circumstances of this case, would comply with this condition is a rate of $20 per week. On this basis, taking account of the $12 per week which was paid, the claim is allowable to the extent of $512 and I so hold.

Settle decree accordingly.