■ BROADWAY COPY SERVICE, INC., Respondent, v BROAD-WALL COMPANY et al., Appellants.—Order of the Supreme Court, New York County, entered December 7, 1979, which, *inter alia,* denied defendants' motion for summary judgment and granted plaintiff partial summary judgment, modified, on the law, to the extent of vacating so much of the order as granted plaintiff summary judgment with respect to the air-conditioning unit and clear glass doors, directed an assessment of damages with respect thereto, dismissed the petition in the summary proceeding, and directed the escrowee to turn over to plaintiff all moneys deposited by plaintiff with the escrowee, and granting defendants' motion for summary judgment only with respect to the clear glass doors and reinstating the petition in the summary proceeding and, as so modified, affirmed, without costs or disbursements. The court erred in awarding summary judgment to plaintiff tenant upon the ground that defendant landlord had partially evicted the tenant from the store leased from the landlord. The tenant claims that the act of the landlord in placing an air-conditioning unit on the floor in the rear section of the store without the tenant's consent deprived the tenant of valuable space so as to constitute an actual partial eviction, and thereby justified the tenant's refusal to pay rent to the landlord *(Fifth Ave. Bldg. Co. v Kernochan,* 221 NY 370, 373). The tenant further contends that the landlord's act in covering the doors leading from the rear of the store to the lobby of the building with opaque paint for the period November, 1975 to June, 1976 precluded prospective customers from knowing the nature of the tenant's business and deprived the tenant of possible sales, thereby also constituting an actual partial eviction which justified the withholding of rent. As to the air-conditioning unit, the landlord maintains that the tenant leased the premises in an "as is" condition, that the previous tenant had "eliminated the ceiling air-conditioning unit in the store" and "there was [only] a dummy air-conditioning unit in the ceiling of said store" when the tenant entered into the lease, that there was no specific location designated for the installation of the air-conditioning unit, and that the tenant acquiesced in the landlord's act of providing a floor rather than a ceiling air conditioner, as evidenced by the floor plan of the tenant's designer, which assigned space for a floor air conditioner. The tenant contends that its president inspected the store prior to entering into the lease. At that time he observed air-conditioning equipment in the ceiling, so that when he entered into the lease, which provided that the landlord was to place "the air-conditioning equipment in operating condition," he had a right to assume that the air-conditioning equipment in the ceiling would be made in operable condition

for the tenant. The tenant asserts, further, that it did not acquiesce, but on the contrary, objected to the placement of an air-conditioning unit on the floor of the store. Issues of fact are thus presented which should be determined at trial. For example, there are issues whether there was an air-conditioning unit in the ceiling of the store which the landlord was required to put into operating condition, whether the tenant acquiesced in the location of the air conditioner on the floor, or if not, whether and to what extent the landlord's act in placing the air conditioner on the floor deprived the tenant of any valuable space to which the tenant was entitled. As to the clear glass doors, we find, contrary to the conclusion of Special Term, that the painting of the doors by the landlord did not constitute an actual partial eviction so as to excuse the tenant from paying rent. "An actual eviction occurs only when the landlord wrongfully ousts the tenant from physical possession of the leased premises. There must be a physical expulsion or exclusion". *(Barash v Pennsylvania Term. Real Estate Corp.,* 26 NY2d 77, 82.) No such expulsion or exclusion occurred here. Nor was there a constructive eviction that would justify nonpayment of rent, if for no other reason than that the tenant remained in possession of the store *(Barash v Pennsylvania Term. Real Estate Corp., supra,* p 83). This is not to say, however, that the tenant may not have a cause of action for compensatory damages because of the painting of the doors. In the circumstances, it is appropriate to reinstate the petition in the summary proceeding—the determination of which is to abide the resolution of the issues of fact herein described. Concur—Kupferman, J. P., Birns and Bloom, JJ.

Fein, J., dissents in part in a memorandum as follows: I disagree with the majority's conclusion that the landlord's painting of the glass lobby doors leading from the rear of plaintiff's store to the lobby of defendant's building did not constitute an actual partial eviction. In my view, the majority too narrowly limits the applicable principle, as set forth in *Barash v Pennsylvania Term. Real Estate Corp.* (26 NY2d 77, 82-83): "An actual eviction occurs only when the landlord wrongfully ousts the tenant from physical possession of the leased premises. There must be a physical expulsion or exclusion *(Fifth Ave. Bldg. Co. v. Kernochan,* 221 N. Y. 370; 2 McAdam, Landlord and Tenant [5th ed.], § 329, p. 1391; 1 N. Y. Law of Landlord and Tenant [Edward Thompson Co.], § 250). And where the tenant is ousted from a portion of the demised premises, the eviction is actual, even if only partial *(Fifth Ave. Bldg. Co. v. Kernochan, supra; 524 West End Ave. v. Rawak,* 125 Misc. 862)." Here the painting over of the windows in the tenant's lobby access doors constituted an ouster "from a portion of the demised premises" and hence an actual partial eviction, as the cases analyzed in the *Barash* opinion demonstrate . In *Schulte Realty Co. v Pulvino* (179 NYS 371), the tenant was held to have suffered a partial actual eviction where the landlord permitted another tenant to cover a large portion of an airshaft on which tenant's windows opened. Similarly, in a case very close to ours, there was a partial eviction where landlord sealed up a window on the tenant's premises *(Adolphi v Inglima,* 130 NYS 130; see *Randall-Smith, Inc. v 43rd St. Estates Corp.,* 17 NY2d 99). Once the partial eviction is established the entire rent is suspended for the duration of the eviction. The remedy is not, as the majority indicates, an action for compensatory damages by the tenant. *Barash (supra)* relied on by the majority, relegated tenant to an action for damages because the denial of a 24-hour ventilation and air-conditioning service was deemed not to be a partial or constructive eviction. Here, there plainly was an actual partial eviction. The extent of the eviction is immaterial. If the eviction is the act of the landlord "it suspends the

entire rent because the landlord is not permitted to apportion his own wrong." *(Fifth Ave. Bldg. Co. v Kernochan,* 221 NY 370, 373; *Fifth Ave. Estates v Scull,* 42 Misc 2d 1052.) Trial Term properly held that the deliberate painting over of the clear glass lobby doors constituted a partial eviction justifying the nonpayment of the rent for the duration of such eviction. Accordingly I would affirm so much of the order appealed from as granted plaintiff summary judgment with respect to the clear glass doors and directed an assessment of damages with respect thereto, and otherwise concur in the majority's disposition of the order appealed from.