Robin MAUALA and Nusi Mauala,
Plaintiffs,

v.

MILFORD MANAGEMENT CORP., H &
P Associates, and J.I. Sopher & Co.,
Inc., Defendants.

No. 81 CIV. 7214 (CBM).

United States District Court,
S.D. New York.

Feb. 2, 1983.*

* Final Typed Copy of Memorandum Opinion       filed in Draft Form January 12, 1983

Stroock & Stroock & Lavan, New York City, for plaintiffs.

Hess, Segall, Guterman, Pelz & Steiner by Michael Zweig, New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, Chief Judge.

This is a diversity action brought by plaintiffs Robin and Nusi Mauala, citizens of Western Samoa, against defendants, H &

P 29th Street Associates (Associates), Milford Management Corp. (Milford), and J.I. Sopher, Inc. (Sopher). Defendants are, respectively, the owner, managing agent, and brokerage agent for a building located at 155 East 29th Street in New York City known as the Biltmore Plaza. Plaintiff Robin Mauala is the First Secretary of the Samoa Mission to the United Nations.

The complaint alleges that plaintiffs were wrongfully evicted from their apartment in the Biltmore Plaza in violation of a valid lease agreement, giving rise to claims of: (1) wrongful eviction; (2) breach of an agreement to enter into a lease; (3) intentional infliction of emotional distress; and (4) related attorney's fees. Plaintiffs seek both compensatory and punitive damages on their first two claims. Both parties agree that New York law is to be applied here.

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and for an order dismissing plaintiffs' claims for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs have cross-moved for partial summary judgment on the issue of defendants' liability. For the reasons set forth below, these motions are granted in part and denied in part.

FACTS

The following facts, except where indicated, are not in dispute. In late September, 1980, Nusi Mauala was shown an apartment in the Biltmore Plaza by a representative of Sopher. In October, 1980, plaintiffs negotiated with defendants, Associates and Milford, to rent apartment 12A at the Biltmore Plaza. Plaintiffs then delivered 3 checks to Sopher, each in the amount of $1,720, each representing one month's rent; plaintiffs also gave Sopher a security deposit and a brokerage fee. At the same time that these checks were delivered, plaintiffs signed and delivered to defendants a copy of a lease for apartment 12A. Defendants never signed or returned a copy of this lease to plaintiffs. Plaintiffs, however, claim that defendants orally agreed to return a signed and fully executed copy of the lease to them.

Defendants subsequently requested that plaintiffs post a letter of credit for over $40,000 as additional security based on their diplomatic status. Following plaintiffs' objections, the parties agreed that plaintiff would deliver a check for $5,160, which defendants acknowledge having received in December, 1980.

Under the terms of the lease executed by plaintiffs, the lease was to take effect on January 1, 1981. Plaintiffs, however, were permitted to take occupancy on December 23, 1980. Due to construction work remaining to be finished, the Biltmore Plaza did not open as originally planned on December 23. In the interim, Milford arranged for free housing for plaintiffs and other prospective tenants at the Milford Plaza Hotel. On December 23, 1980, plaintiffs were given keys to apartment 12A in the Biltmore and were permitted to store their belongings there. Defendants also painted apartment 12A in accordance with plaintiffs' color specifications. Plaintiffs ordered custom made rugs and furniture and arranged for electricity to be transferred over to their name in preparation for the move to the apartment.[1]

In mid-January, 1981, written notice was sent to plaintiffs and the other prospective tenants instructing them to arrange move-in times with Milford. On January 24, plaintiffs' move-in date, defendants informed plaintiffs that because of plaintiffs' irresponsible behavior in the Milford Plaza Hotel, they would not be allowed to move into apartment 12A in the Biltmore Plaza. Immediately thereafter, plaintiffs were asked to relinquish their keys to apartment 12A. The instant action followed.

---

**1.** Plaintiffs' allegations that defendants painted the apartment according to plaintiffs' color specifications and that plaintiffs purchased custom made rugs and furniture are not controverted by defendants in a Rule 3(g) statement in opposition to plaintiffs' motion for summary judgment. Thus, these allegations are deemed admitted pursuant to Rule 3(g).

## Discussion

### Breach of an Agreement for a Lease

Plaintiffs claim that defendants breached an agreement to them in which the parties agreed that plaintiffs would rent apartment 12A at the Biltmore Plaza for a three year term. Defendants contend that plaintiffs have not alleged facts sufficient to show the existence of an agreement to enter into a lease and, even, if they have, the agreement is invalid under the relevant provision of the New York Statute of Frauds, N.Y. General Obligations Law § 5–703 (McKinney 1963).

New York General Obligations Law § 5–703(2) requires that a contract for the lease or sale of any real property be evidenced by a written note or memorandum signed by the party to be charged. Here, it is undisputed that the agreement to enter into the lease was not in writing and the lease was not signed by the party to be charged. The case therefore falls squarely within the New York Statute of Frauds.

Plaintiffs argue that the fact that the lease itself was not signed is not determinative, since there is no requirement under the New York Statute of Frauds that the signed writing be contained in a single document. *See Crabtree v. Elizabeth Arden Sales Corp.,* 305 N.Y. 48, 110 N.E.2d 551, 553 (1953) (various signed and unsigned documents may be pieced together to fulfill the Statute of Frauds requirement). Plaintiffs claim that the lease, the checks written to defendants as payments for rent and security, and various other written communications between the parties, when read together, satisfy the writing requirement under the Statute of Frauds.

■ Under New York law, in order to prevail on the theory that a "confluence of memoranda" may be used to satisfy the writing requirement, the party asserting its existence must, at minimum, produce "one document establishing the basic underlying contractual commitment." *O'Keeffe v. Bry,* 456 F.Supp. 822, 829 (S.D.N.Y.1978). This doctrine is premised on the notion that there must be "a core document evidencing a promise was present, and [that] additional memoranda were permitted only to supply the essential terms of the agreement ... not to piece together the existence of the agreement itself." *Id.* at 829. *See also Bruce Realty Company of Florida v. Berger,* 327 F.Supp. 507 (S.D.N.Y.1978). Rather, as the Second Circuit recently held, "Such unsigned documents may only supplement the signed documents ... if there is convincing corroborative evidence of defendant's assent to the contents of the unsigned ... memorandum...." *Roulley, et al. v. Inex Co.,* 677 F.2d 14 at 15 (2d Cir. 1982).

■ Plaintiffs concede that defendants never signed an agreement to deliver a fully executed lease. Further, the only document relied on by plaintiffs which contains the essential terms of the agreement between the parties is the lease itself which defendants never signed. The other unsigned documents relied upon by plaintiffs—the checks sent to defendants and the written notices that plaintiffs received from defendants do not contain any of the essential terms of the alleged agreement to deliver a lease. Since plaintiffs have submitted no documents signed by defendants evidencing their assent to agreement to sign and deliver a lease, the plaintiffs cannot, on the basis of these and other writings, overcome the Statute of Frauds defense.

■ Alternatively, plaintiffs argue that even if the memoranda are insufficient to fulfill the writing requirement under N.Y. General Obligations Law § 5–703(2), this does not preclude enforcement of the lease since this case falls within the part performance exception to the Statute of Frauds. New York General Obligations Law § 5–703(4) provides that "[n]othing contained in this section abridges the powers of courts of equity to compel the specific performance of agreements in cases of part performance." The plain language of the statute thus empowers the courts to grant the equitable remedy of specific performance of an agreement where there has been sufficient part performance, but makes no

provision for an award of money damages when part performance has been alleged. Because the complaint in this action seeks damages rather than specific performance, plaintiffs cannot rely on the part performance doctrine to remove this case from the Statute of Frauds. *See Roulley, et al. v. Inex Co., et al., supra,* at 16 n. 2; *In re Ditson's Estate,* 177 Misc. 648, 31 N.Y.S.2d 468 (Sup.Ct.N.Y.Cty.1941); *In Re Douglas' Will,* 169 Misc. 716, 8 N.Y.S.2d 717, *aff'd* 256 A.D. 1070, 12 N.Y.S.2d 359 (1939).

■ Finally, plaintiffs claim that defendants should be barred from asserting the defense of the Statute of Frauds based on the doctrine of promissory estoppel. This doctrine may be invoked to avoid the "harsh results of allowing the promissor to repudiate, when the promisee has acted in reliance upon the promise." *James King & Son, Inc. v. DeSantis Construction No. 2 Corp.,* 97 Misc.2d 1063, 1066, 413 N.Y.S.2d 78, 81 (Sup.Ct.N.Y.Cty.1977). Application of this equitable doctrine is warranted only where there is (i) a fraudulent oral promise by the defendant; (ii) upon which the plaintiff relies; (iii) by engaging in acts which are "unequivocally referable" to the oral promise; (iv) resulting in substantial injury to plaintiff. *Marcraft Recreation Corp. v. Francis Devlin Co.,* 506 F.Supp. 1081, 1086 (S.D.N.Y.1981) *citing Philo Smith & Co. v. USLIFE Corp.,* 420 F.Supp. 1266, 1271–72, *aff'd,* 554 F.2d 34 (2d Cir.1977); *Special Event Entertainment v. Rockefeller Center, Inc.,* 458 F.Supp. 72, 76 (S.D.N.Y.1978); *Gleason v. Tompkins,* 84 Misc.2d 174, 375 N.Y.S.2d 247 (Sup.Ct. Steuben Cty.1975); *Brockport Developers, Inc. v. 47 Ely Corp.,* 82 Misc.2d 310, 313, 369 N.Y.S.2d 601, 606 (Sup.Ct. Monroe Cty.1975).

■ Mindful of the fact that plaintiffs' burden of proof on this issue is heavy because the Statute of Frauds is not easily avoided, the court concludes that there are disputed issues of fact with respect to, *inter alia,* whether defendants falsely and fraudulently represented to plaintiffs that they would deliver a lease for apartment 12A (or whether defendants fraudulently concealed from plaintiffs the fact that the lease had

not been approved) and whether plaintiffs suffered substantial injury by relying on this allegedly fraudulent representation. In connection with the latter issue, plaintiffs' allegations that they contracted for custom made rugs and furniture, not disputed by defendants in a Rule 3(g) statement in opposition to plaintiffs' motion, raises a factual question as to whether plaintiffs actually and substantially relied to their detriment on the alleged promise to deliver a lease to apartment 12A. Accordingly, the court cannot conclude as a matter of law that the doctrine of equitable estoppel is unavailable to plaintiffs here.

■ Similarly, the court concludes that there is a disputed issue of fact with respect to whether defendants' alleged breach of the agreement to deliver a lease was sufficiently willful and malicious to warrant an award of punitive damages on this claim. While the court is doubtful that plaintiffs will prevail on this claim, the allegations in plaintiffs' complaint are sufficient to allow them to go to trial on this issue.

*Intentional Infliction of Emotional Distress*

■ Plaintiffs claim that defendants' conduct in the course of evicting them from the premises gives rise to an independent cause of action for intentional infliction of emotional distress. Liability for the independent tort of intentional infliction of emotional distress may be found where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Fischer v. Maloney,* 373 N.E.2d 1215, 43 N.Y.2d 553, 559, 402 N.Y.S.2d 991, 993 (1978). The conduct must be of a nature that is especially calculated to cause and does cause mental distress. *See also Gordon v. Roche Laboratories, Division of Hoffman-La Roche, Inc.,* 116 Misc.2d 688, 456 N.Y.S.2d 291 (Sup.Ct.N.Y.Cty.1981).

■ Plaintiffs have alleged facts to support their contention that defendants' conduct was so extreme or outrageous as to

state a claim for the intentional infliction of emotional distress. (*See* Plaintiff Robin Mauala's Affidavit in Support of the Motion for Partial Summary Judgment at ¶¶ 25–31; Complaint at ¶¶ 35–48, 67–75.) Plaintiffs have raised material issues of fact to be resolved by the trier of fact on this claim. Accordingly, the motion for summary judgment with respect to the claim for intentional infliction of emotional distress is denied.

*Wrongful Eviction*

■ Defendant argue that plaintiffs have not stated a claim for wrongful eviction because they at no time occupied the premises pursuant to a valid, enforceable lease. The existence of an enforceable lease, however, is not a condition precedent to the assertion of a claim for wrongful eviction. In the absence of a binding lease agreement, an action for wrongful eviction may be premised on the theory that plaintiffs were tenants at will.

■ A tenant in possession under a lease which is void because not in compliance with the Statute of Frauds is a tenant at will. *Talamo v. Spitzmiller,* 120 N.Y. 37, 23 N.E. 980 (1890); *Genesee Management, Inc. v. Del Bello,* 69 A.D.2d 987, 416 N.Y.S.2d 444 (4th Dept.1979); *Fisher v. Queens Park Realty Corp.,* 41 A.D.2d 547, 339 N.Y.S.2d 642, 645 (2d Dept.1973); *Carman v. Fox,* 86 Misc. 197, 200, 149 N.Y.S.2d 695 (Civ.Ct.N.Y.Cty.1971); *People ex rel. Botsford v. Darling,* 47 N.Y. 666 (1872).

New York Real Property Law Art. 7 § 228 (McKinney 1962) provides that "[a] tenancy at will or by sufferance, however created, may be terminated by a written notice of not less than thirty days given in behalf of the landlord, to the tenant, requiring him to remove from the premises..." Failure to comply with this provision gives rise to statutory and punitive damages. *Fisher v. Queens Park Realty Corp.; see*

*also Stiles v. Donovan,* 100 Misc.2d 1048, 420 N.Y.S.2d 453 (Civ.Ct.N.Y.Cty.1979).

Defendants admit that they never gave the required notice of termination to plaintiffs. They argue, however, that plaintiffs have alleged insufficient facts to support a finding that they were tenants at will because they never actually lived in the apartment in question.[2] In a related argument, defendants claim that plaintiffs' lack of residence also subjects the claim of wrongful eviction to a motion to dismiss. Defendants also claim that they gave plaintiffs the key to apartment 12A for the limited purpose of storing plaintiffs' belongings there while their application for a lease was being reviewed. In this connection, defendants characterize plaintiffs as licensees rather than tenants, with no right of possession or entitlement and thus no claim for wrongful eviction.

■ With respect to the argument that plaintiffs have not alleged actual residency and were therefore not tenants at will, defendants have cited no authority for the proposition that actual residence in the premises is a requirement of a tenancy at will. The court concludes that where, as here, the plaintiffs are given keys to the apartment, the landlord accepts rent and a security deposit, and the plaintiffs are permitted to store their belongings there for over one month while construction on the apartment building is being completed, a tenancy at will exists and a cause of action for wrongful eviction may be asserted.

■ Defendants also contend that actual residence in the premises is a necessary element of a claim for wrongful eviction. Since plaintiffs never actually resided in the Biltmore Plaza, defendants argue that plaintiffs' claim must be dismissed. The court finds that defendants have misstated the necessary elements of a claim for

**2.** Defendants also assert that because they had not procured a New York City Buildings Department Certificate of Occupancy on December 23, 1981, the date plaintiffs were given keys to the apartment, the alleged tenancy was unlawful and a cause of action for wrongful evic-

tion may not be asserted. The court does not agree. Even assuming this to be true, however, the tenancy became "lawful" on January 9, 1981, the date the Certificate was obtained. Plaintiffs may thus assert a claim for wrongful eviction as of this date.

wrongful eviction. In *Barash v. Pennsylvania Terminal Real Estate Corporation,* 26 N.Y.2d 77, 82, 308 N.Y.S.2d 649, 652, 256 N.E.2d 707, (1970), the Court of Appeals stated that "[a]n actual eviction occurs only when the landlord wrongfully ousts the tenant from *physical possession* of the premises" (emphasis added). As formulated by the Court of Appeals, a wrongful eviction refers to an ouster from physical possession without reference to residence. In order for defendants to succeed on their motion to dismiss, then, they must demonstrate that the concept of residence is identical to the concept of physical possession. A brief examination of the case law demonstrates that the law maintains a clear distinction between possession and residence.[3] Further, the case law indicates that an action for wrongful eviction may be maintained without actual residence.

In *Broadway Copy Service, Inc. v. Broad-Wall Company,* 77 A.D.2d 827, 431 N.Y.S.2d 13 (1st Dept.1980), the plaintiff-tenant leased a store from the defendant landlord. Later the landlord placed an air-conditioning unit in the rear section of the store and painted the doors opening into the lobby of the building. The tenant claimed that these two acts constituted wrongful eviction.[4] Reversing the trial court's grant of summary judgment in favor of plaintiff, the Appellate Division held that material issues of fact existed with respect to the installment of the air-conditioner. In *Broadway Copy Service, Inc.,* although the plaintiff never actually resided in the premises,[5] it was allowed to assert a claim for wrongful eviction. This court therefore concludes that residence, as distinguished

from possession, is not a necessary element of a claim for wrongful eviction.

■ Defendants' argument that plaintiffs were licensees rather than tenants at will precludes the grant of summary judgment. The question of plaintiffs' status on the premises turns in large part on whether defendants intended that plaintiffs enter the premises as tenants as opposed to licensees. *See, e.g., Roberts v. Eastman,* 134 Misc. 677, 236 N.Y.S. 353 (County Ct.Tioga Co.1929). Because defendants' intent is in dispute here, and because different inferences can be drawn from the fact that defendants allowed plaintiffs to store their belongings in the apartment for one month, gave plaintiffs the keys to the apartment, provided them with free temporary housing and accepted rent and security deposits, summary judgment on this claim is inappropriate.

■ Plaintiffs should also be allowed to proceed to trial on the issue of whether they are entitled to punitive damages on this claim. Punitive damages may be awarded to tenants when a landlord's conduct is "morally culpable or actuated by evil and reprehensible motives." *Davis v. Williams,* 92 Misc.2d 1051, 402 N.Y.S.2d 92, (Civ.Ct.Kings Cty.1977). *See also Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961); *Fisher v. Queens Park Realty Corp.,* 339 N.Y.S.2d at 646. Here, because plaintiffs have alleged sufficient facts to put defendants' motivation into issue, their claim for punitive damages should be determined by a jury.

---

**3.** For instance, the execution and delivery of a lease gives the tenant the right to possession even if he never resides in the premises. *See Darob Holding Co. v. House of Pile Fabrics, Inc.,* 62 Misc.2d 899, 310 N.Y.S.2d 418 (N.Y. Civ.Ct.1970). The right to possession and physical possession are for present purposes equivalent concepts. This is so because physical possession is simply one form of the exercise of the right to possession. The important point is that possession is distinguishable from residence. *See also 59 Madison Ave. Corp. v. Bauer,* 15 Misc.2d 780, 180 N.Y.S.2d 1013 (N.Y. Mun.Ct.1959).

**4.** Both claims were for actual partial eviction: this does not, however, change the analysis.

**5.** That a commercial tenant was involved in *Broadway Copy Service, Inc.* as opposed to a residential tenant as is the case here does not alter the analysis. In terms of the wrongful eviction doctrine, the courts do not distinguish between commercial and residential tenants. *See Barash v. Pennsylvania Terminal Real Estate Corporation,* 26 N.Y.2d 77, 308 N.Y.S.2d 649, 256 N.E.2d 707 (1970).

*Attorneys' Fees*

 Plaintiffs claim that they are entitled to attorneys' fees pursuant to N.Y. Real Property Law 234 (McKinney 1966) (amended 1969) which provides in part that:

> Whenever a lease of residential property shall provide that in any action .... the landlord may recover attorneys' fees ... as the result of the failure of the tenant to perform any covenant or agreement contained in such lease ... there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys' fees ... incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease....

The statute thus allows a tenant to recover attorneys' fees "wherever a lease ... provide[s] that ... the landlord may recover attorneys' fees...." Here, plaintiffs do not premise their claims on an enforceable lease which allows the landlord to recover attorneys' fees, but rather on an oral lease or an oral agreement to enter into a lease. Plaintiffs have cited no authority, and the court has found none, where such claims would support an implied right to attorneys' fees under § 234. Accordingly, plaintiffs' claim for attorneys' fees pursuant to § 234 is dismissed and summary judgment is entered in defendants' favor.

*Claims Against Sopher*

 Plaintiffs concede that defendant Sopher was not acting as plaintiffs' landlord but rather as an agent for a disclosed principal. As such, the claims for wrongful eviction and breach of an agreement to enter into a lease may not be asserted against him. Plaintiffs argue, however, that further discovery might reveal that Sopher had a financial interest in the Biltmore Plaza or was a limited partner in Associates. Because no facts have been alleged to support this conjecture, the court will dismiss the claims asserted against Sopher at this time. Should plaintiffs discover further facts to support the claims against Sopher, the court will reconsider this ruling.

*Conclusion*

For the reasons discussed herein, both parties' motions for summary judgment on plaintiffs' claim for breach of an agreement to enter into a lease are denied on the ground that there is a disputed issue of fact with respect to whether defendants should be estopped from asserting the Statute of Frauds defense. Defendants' summary judgment motion with respect to plaintiffs' claim for the intentional infliction of emotional distress is denied. Defendants' motion to dismiss plaintiffs' claim for statutory attorneys' fees is granted. Both parties' motions for summary judgment on plaintiffs' claim for wrongful eviction are denied. Defendants' motion to dismiss plaintiffs' claims for punitive damages is denied. All claims against defendant Sopher are dismissed without prejudice to plaintiffs' reassertion of the claims should further evidence concerning Sopher be discovered.