WILLIAM ISELIN & CO.,
INC., Plaintiff,

v.

BOARDWALK REGENCY CORPORA-
TION, Desert Palace, Inc., California
Clearing House, Sid Green Plastics and
Sid Green, Defendants.

No. ·87 Civ. 2884(RWS).

United States District Court,
S.D. New York.

Jan. 13, 1989.

Winick & Rich, P.C., New York City, for plaintiff; Scott H. Wyner, of counsel.

Newman Schlau Fitch & Burns, P.C., New York City, for defendants Boardwalk Regency Corp., Desert Palace, Inc. and California Clearing House; Robert A. Fitch, Olivia M. Gross, of counsel.

Ashinoff, Ross & Goldman, New York City, for defendant Sid Green; Reid L. Ashinoff, Dawn S. Markowitz, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff William Iselin & Co. Inc. ("Iselin") has sued defendants Boardwalk Regency Corporation ("BRC"), Desert Palace, Inc. ("DPI"), California Clearing Corp. ("CCC") (collectively, "the casino defendants"), and Sid Green ("Green") to recover funds Joseph L. Ruzzi ("Ruzzi") fraudulently diverted from several corporations he controlled to pay his personal gambling debts. The casino defendants and Green, separately, have moved pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 11 to dismiss the complaint in its entirety and to recover their costs and attorneys fees. Iselin has moved pursuant to Federal Rule of Civil Procedure 15(a) for leave to amend its complaint. For the reasons set forth below, Iselin's first, third, and fourth claims are dismissed, Iselin's counsel is required to pay the defendants the costs and attorneys fees they incurred defending against the first claim, and Iselin's request to amend its complaint to drop its fourth claim and retain its second claim is granted, but its request to add a claim for monies had and received is denied.

*The Parties*

Iselin is a New York corporation engaged in the business of, among other things, factoring and commercial finance.

BRC is a New Jersey corporation that operates "Caesar's Boardwalk Regency," a licensed gambling casino and hotel in Atlantic City, New Jersey. DPI is a Nevada corporation that operates "Caesar's Palace," a licensed gambling casino and hotel in Las Vegas, Nevada. CCC is a California banking operation that BRC and DPI allegedly used as a clearing house to preserve their patrons' anonymity in making payments for gambling debts.

Green, a Canadian citizen, worked as a "junketeer" who allegedly served as BRC's and DPI's agent for purposes of organizing "free" gambling trips to Atlantic City and Las Vegas. The complaint alleges that Green accepted checks payable to a fictitious corporation named "Sid Green Plastics."

*The Facts*

Ruzzi controlled numerous corporations, including Phoenix Toys, Inc. ("Phoenix Toys"), that he used to obtain millions of dollars fraudulently. Both Ruzzi and his wife, Linda, have been convicted of federal mail and wire fraud.

Beginning in early 1983, Iselin and Phoenix Toys entered into a factoring contract under which Iselin agreed to buy the accounts receivable arising from Phoenix Toys's sales. Pursuant to this contract, Iselin advanced more than $10 million to Phoenix Toys for accounts receivable reflected in invoices for merchandise that Phoenix Toys purportedly had sold to customers. These invoices in fact later proved to be fictitious or encumbered in favor of others.

In its attempt to recover some of the money Ruzzi diverted from Phoenix Toys, Iselin has sued the casino defendants and Green. Iselin's principal contention is that the defendants wrongfully accepted checks drawn on Phoenix Toys's corporate account in payment for Ruzzi's personal gambling debts. These funds properly belong to Iselin, Iselin contends, because Phoenix Toys originally obtained them by fraudulently inducing Iselin to advance Phoenix Toys money against nonexistent or encumbered accounts receivable. Phoenix Toys now is insolvent, as Iselin alleges it was at the time the defendants' accepted the company's corporate checks as payment for Ruzzi's personal gambling debts.

Iselin's first complaint includes four claims. The first claim, which alleges a statutory violation, provides:

32. The above payments were illegally accepted by BRC and DPI in payment for gambling debts. Among other things, such payments were in the form of corporate checking accounts, in violation of Title 19K of the New Jersey Administrative Code, Title 5 N.J.S.A.

33. Such checks, cashed, transferred, conveyed or given to DPI, BRC and California Clearing House [sic] or their affiliates, were in violation of such regulation and are invalid and unenforceable.

The second claim for fraudulent conveyances states:

35. The foregoing transfers were fraudulent conveyances within the meaning of the Uniform Fraudulent Conveyance Act, codified under N.Y. Debt. & Cred. L. § 271(1).

36. Upon information and belief, at the time the transfers were made, the transferors were insolvent within the meaning of N.Y. Debt & Cred. L. § 271(1).

37. Upon information and belief, each of the transfers as aforesaid was made by persons who were or were thereby rendered insolvent and were without a fair consideration or otherwise were illegal consideration.

38. Upon information and belief, each of the transfers made as aforesaid was made with actual intent to hinder, delay or defraud creditors.

The third claim for conversion provides:

40. The foregoing constitutes conversion by defendants of property belonging to plaintiff.

41. The foregoing acts were committed with actual malice, wilfulness, recklessness and other egregious misconduct.

The fourth claim for fraud states:

43. Upon information and belief, defendants intentionally and substantially aided and abetted the commission of the fraudulent scheme to defraud Iselin by accepting corporate checks for the payment of gambling debts. Furthermore, defendant Sid Green, by accepting checks made payable to a fictitious corporate entity [Sid Green Plastics] intentionally concealed from Iselin the ongoing scheme by creating the appearance that the checks to Sid Green Plastics were periodic customer payments of valid invoices.

44. The foregoing acts were committed with actual malice, wilfulness, recklessness and other egregious misconduct.

*Prior Proceedings*

Iselin filed the complaint on April 29, 1987. The casino defendants and Green have moved to dismiss the complaint in its

entirety and for sanctions. Iselin has moved to amend its complaint to (a) drop the fraud claim (fourth claim); (b) replead the statutory and conversion claims (first and third claims) as one claim for monies had and received; and (c) proceed with the originally asserted claim for fraudulent conveyances (second claim). Oral argument was heard, and the motions were considered fully submitted on October 21, 1988.

### Standard for a Motion to Dismiss

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim that entitles him to relief. *See Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). In considering a 12(b)(6) motion to dismiss, a court must construe the complaint's allegations in the light most favorable to the plaintiff and accept these allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.*, 423 F.2d 188, 191 (2d Cir. 1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1363, at 656 (1969).

### The Statutory Claim

■ Iselin's first claim, which relies upon a New Jersey law barring casinos from accepting corporate checks for payment of gambling debts, is dismissed for failure to state a claim upon which relief can be granted. The defendants accepted the Phoenix Toys checks as payment for Ruzzi's personal gambling debts before New Jersey enacted this law, and New Jersey did not provide for the law to have retroactive effect.

Iselin concedes this fact. In a letter dated May 2, 1988, Iselin's counsel, Scott H. Wyner ("Wyner") stated:

Admittedly, the instant transactions predate the specific regulatory provisions which prohibit the use of corporate checks by Casino patrons.

Moreover, Iselin's proposed amended complaint abandons this claim by converting it to one for monies had and received.

### The Fraudulent Conveyance Claim

■ Relying on sections 273 and 276 of New York's Debtor and Creditor law, Iselin attempts to invalidate the payments to the defendants as fraudulent conveyances. Iselin has stated a claim against the casino defendants for fraudulent conveyance under both sections 273 and 276.

Section 273 provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

*See, e.g., Schmitt v. Morgan*, 98 A.D.2d 934, 471 N.Y.S.2d 365, 366 (3d Dep't 1983) (transfer by an insolvent debtor without fair consideration constitutes a fraudulent conveyance without regard to actual intent of transferee), *appeal denied*, 62 N.Y.2d 914, 467 N.E.2d 893, 479 N.Y.S.2d 9 (1984); *County of Dutchess v. Dutchess Sanitation Servs., Inc.*, 86 A.D.2d 884, 447 N.Y.S. 2d 531 (2d Dep't 1982) (same).

Here, Ruzzi's use of Phoenix Toys's corporate checks to pay his personal gambling debts states a claim for fraudulent conveyance. Because the gambling debts belonged to Ruzzi, not Phoenix Toys, Phoenix Toys's assets were depleted, but it gained nothing from the transaction. It therefore did not receive fair consideration for its checks. The Second Circuit has stated the rationale underlying this principle:

Three-sided transactions ... present special difficulties under the [11 U.S.C. § 107(d)(1)(e)] definition of fair consideration.... [I]f the debt secured by the transaction is not the debtor's own, then his giving of security will deplete his estate without bringing in a corresponding value from which his creditors can benefit, and his creditors will suffer just as they would if the debtor had simply made a gift of his property or obligation. Accordingly, courts have long recognized that "[t]ransfers made to benefit third

parties are clearly not made for a 'fair' consideration," and, similarly, that "a conveyance by a corporation for the benefit of an affiliate [should not] be regarded as given for fair consideration as to the creditors of the conveying corporations." [Citations omitted].

*Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 991 (2d Cir.1981); *see also Bennett v. Rodman & English, Inc.,* 2 F.Supp. 355 (E.D.N.Y.), *aff'd,* 62 F.2d 1064 (2d Cir.1932) (holding that payments by an insolvent corporation of the debts of another corporation are presumptively fraudulent).

The casino defendants respond to this argument by stating:

To argue that some payments were allegedly made by corporate checks, signed by the debtor who is the principal, if not the sole shareholder of the corporation, merely ignores the substance of the transaction in a failing effort to state a claim. Ruzzi and Phoenix Toys are one. Ruzzi is the president and owner of the company. The substance rather than the semblance of the transaction is the directive.

However, this argument conflicts with elementary corporate law principles. A corporation's property rights are entirely distinct from those of its shareholders. *Boise Cascade Corp. v. Wheeler,* 419 F.Supp. 98, 101 (S.D.N.Y.1976), *aff'd,* 556 F.2d 554 (2d Cir. 1977). As stated in *Torrey Delivery, Inc. v. Chautauqua Truck Sales & Serv., Inc.,* 47 A.D.2d 279, 366 N.Y.S.2d 506, 510 (4th Dep't 1975):

It has long been the law in New York that "a corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets; that even complete ownership of capital stock does not operate to transfer the title to corporate property; and that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property." (*Brock v. Poor,* 216 N.Y. 387, 401, 111 N.E. 229, 234.)

Section 276 provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

Under this section, an intent to defraud is assumed where the conveyance is made without consideration. *Laco X–Ray Sys., Inc. v. Fingerhut,* 88 A.D.2d 425, 453 N.Y. S.2d 757 (2d Dep't 1982) (where the conveyance is made without consideration "the conveyance is vulnerable to attack by a creditor *without* regard to the actual intent *of the transferor—that is, the transferor is considered to have been* in constructive fraud of the creditor [citation omitted].) (emphasis in original). As noted above, Iselin has alleged sufficient facts to demonstrate that the casino defendants accepted Phoenix Toys's checks without consideration.

The casino defendants attempt to defeat Iselin's claim for fraudulent conveyance by arguing that the claim falls short of Federal Rule of Civil Procedure 9(b)'s requirement that a party plead fraud with particularity. Rule 9(b) seeks to provide defendants with notice of the charges against them. *See Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985). Here, Iselin has pled the circumstances constituting the fraudulent conveyance with sufficient particularity. Iselin alleges:

(1) Iselin and Phoenix Toys entered into a factoring agreement by which Iselin advanced money to Phoenix Toys on the strength of its accounts receivable.

(2) Iselin advanced in excess of $10,000,000 based upon Phoenix Toys's fabricated accounts receivable.

(3) Pursuant to the factoring agreement Phoenix Toys promised to pay the full amount of (i) any invoice that remained unpaid (other than as a result of the customer's inability to pay) or (ii) any invoice for which Phoenix breached its warranties.

(4) Ruzzi and others used Phoenix Toys's corporate checks to pay personal gambling debts.

(5) Iselin identifies particular corporate checks listing the drawee, the payee, and the amount of the check that individuals used to pay personal gambling debts.

(6) The drawers of the checks were insolvent and the checks were provided without fair consideration.

(7) The transfers were made with intent to defraud creditors.

These factual allegations clearly set forth sufficient facts to support claims under Debtor and Creditor Law § 273 and § 276. *See Schneider v. Austin*, 94 F.R.D. 44 (S.D.N.Y.1982).

■ Although Iselin has stated a claim for fraudulent conveyance against the casino defendants, it has not done so against Green. Iselin's claim against Green turns on his alleged capacity as "agent, apparent or actual of BRC and DPI." However, where there is a disclosed principal-agency relationship and a contract or debt allegedly relates to a matter of the agency, the agent will not be personally bound without clear and explicit evidence of the agent's intention to substitute his personal liability for or to that of the principal. *See* 3 N.Y. Jur.2d, *Agency and Independent Contractors* § 276, at 96–97; *Mauala v. Milford Mgt. Corp.*, 559 F.Supp. 1000 (S.D.N.Y. 1983).

New York courts have dismissed complaints against an agent where the defendant was acting as an agent for a disclosed principal. *See, e.g., Tender Loving Care Agency, Inc. v. Hladun*, 111 A.D.2d 162, 488 N.Y.S.2d 790 (2d Dep't 1985) (reversing lower court and dismissing a complaint where a nephew was acting as agent for his uncle and there was no explicit evidence of his intent to be bound personally); *Spain v. Howard Holmes, Inc.*, 108 A.D.2d 741, 485 N.Y.S.2d 87 (2d Dep't 1985) (reversing trial court and granting summary judgment dismissing complaint where clear and explicit evidence of agent's intention to be bound was lacking). This principle also applies in Nevada, where DPI does business, *see Seigworth v. Nevada*, 91 Nev. 536, 539 P.2d 464 (1975), and in New Jersey, where BRC does business, *see Stopford v. Boonton Molding Co.*, 56 N.J. 169, 265 A.2d 657 (1970).

Iselin's claim against Green for fraudulent conveyance is premised solely on Green's capacity as an agent for disclosed principles. It therefore fails to state a claim upon which relief can be granted.

*The Conversion Claim*

■ Iselin's third claim for conversion is barred by the statute of limitations. New York has a three-year statute of limitations for conversion claims.[1] C.P.L.R. § 214(3). Iselin brought this action on April 29, 1987, but the last alleged payment to the defendants was on March 8, 1984, more than three years earlier. Moreover, by moving to restate its conversion claim as a claim for monies had and received, which has a six-year statute of limitations, Iselin effectively concedes that its conversion claim is time-barred.

*The Fraud Claim*

Iselin's fourth claim for fraud is dismissed for failure to state a claim upon which relief can be granted. Iselin's allegation that the defendants aided and abetted Ruzzi's fraud relied upon Iselin's incorrect assumption that the defendants had cashed checks made payable to "Sid Green Plastics," a fictitious corporation. When discovery revealed that no such checks existed, Wynan wrote the defendants a letter dated July 22, 1988, stating:

As you know, discovery has been proceeding on a step-by-step basis in the face of defendants' claim that there is no factual basis for plaintiff's lawsuit—par-

---

**1.** A federal court must look to the statute of limitations of the forum state. Under New York's borrowing statute, New York Civil Practice Law and Rules ("C.P.L.R.") § 202, where a cause of action accrues in favor of a New York resident, a New York court will apply New York's statute of limitations, regardless of where the cause of action arose. *In re Agent Orange Product Liability Litigation*, 597 F.Supp. 740, 801 (E.D.N.Y.1984); *McCarthy v. Bristol Laboratories*, 86 A.D.2d 279, 449 N.Y.S.2d 280 (2d Dep't 1982); *Rossi v. Ed Peterson Cutting Equip. Corp.*, 131 Misc.2d 31, 498 N.Y.S.2d 283 (N.Y.Co.1986). New York's statute of limitations applies here because Iselin is a New York corporation.

ticularly with respect to the allegations of aiding and abetting the fraud of Ruzzi and others. Through the discovery from the non-party banks and the partial production by the "Casino defendants," it has become clear that the records of Phoenix Toys, Inc. which reflected payments to "Sid Green Plastics" are not accurate. In light of this, we are willing to withdraw as against all defendants our fourth claim for relief and our claim for punitive damages found in the *ad damnum* clause of the third claim for relief.

### Rule 11 Sanctions

■ The casino defendants and Green seek sanctions under Federal Rule of Civil Procedure 11 on two grounds: (1) Iselin's first claim alleged a violation of a law that was not in effect until after the events at issue occurred and (2) Iselin's fourth claim relied upon checks payable to "Sid Green Plastics" when in fact no such checks existed. For the reasons set forth below, Iselin's attorneys are ordered to pay the defendants' costs and attorneys fees associated with defending against Iselin's first claim.

Rule 11 of the Federal Rules of Civil Procedure provides:

Every pleading, motion, and other paper of a party shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or oth-

er paper, including a reasonable attorney's fee.

In *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985), *modified,* 821 F.2d 121 (2d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 269, 98 L.Ed. 2d 226 (1987), the Second Circuit stated that Rule 11 "explicitly and unambiguously imposed an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." The Court found that an attorney violates Rule 11 where:

it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.

*Id.* at 254. Iselin's counsel's conduct in this action meets this test.

Before they signed the complaint in this action, Iselin's counsel failed to determine whether the statute they were relying on for the first claim was in effect when the alleged wrongdoing occurred. This fact in itself supports a finding that counsel failed to conduct a "reasonable inquiry" into the applicable law before signing the complaint.

Upon receiving the complaint in April 1987 and conducting their own investigation, defendants' counsel discovered that the New Jersey law Iselin relied upon in its first claim took effect after the events at issue. On August 6, 1987, defendants' counsel wrote Iselin's counsel advising them of this fact, enclosing the applicable statutes and regulations, and urging them to withdraw the claim voluntarily.

Yet Iselin's counsel persisted. In a letter dated May 2, 1988, Wyner admitted that the statute did not support the first claim, but he declined to withdraw it. In a subsequent letter, dated July 22, 1988, Wyner stated:

We do not read the first claim for relief to exclusively assert a claim on the regulation referred to in the complaint. The first and third claims for relief assert that, in light of the regulations under

which defendants were required to operate and the circumstances known to defendants surrounding the transactions, plaintiff has a right to recover the funds it provided to Phoenix as a result of the fraud and used by Phoenix to pay Ruzzi's personal gambling debts. Should you feel that these claims should be more clearly set forth, we would be willing to amend the complaint.

This attempt to characterize the first cause of action as a general claim for relief is without merit. Paragraph 32 of the complaint refers specifically to the law at issue, and paragraph 33 says the corporate checks "were in violation of *such regulation* and are invalid and unenforceable." (Emphasis added). Moreover, despite his purported willingness to amend his complaint, Iselin's counsel did not offer to do so until the defendants had moved to dismiss the complaint, setting forth at length their objections to the first claim.

Iselin's counsel's failure to investigate the applicable law prior to signing the complaint and their refusal to withdraw or amend Iselin's first claim upon learning from the defendants' counsel that the first claim relied upon inapplicable law compelled the defendants to defend against a claim "that ha[d] absolutely no chance of success...." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *modified*, 821 F.2d 121 (2d Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Accordingly, Iselin's counsel is ordered to pay the costs and attorneys fees incurred in defending against the first claim.

The defendants also seek Rule 11 sanctions for the costs associated with defending against Iselin's fourth claim for fraud, claiming that Iselin's counsel failed to conduct a reasonable inquiry when it filed the complaint relying on checks allegedly payable to "Sid Green Plastics" that in fact did not exist. However, Iselin's counsel's conduct in preparing this claim does not support Rule 11 sanctions.

Here, Iselin's counsel conducted a reasonable investigation before filing the complaint. Iselin audited Phoenix Toys's records prior to commencing this litigation and discovered ledger entries for checks payable to "Sid Green Plastics." Reliance upon these entries when the checks themselves were unavailable was reasonable.

Moreover, when Green's counsel advised Iselin's counsel that Green had no association with "Sid Green Plastics," Iselin's counsel promptly subpoenaed the non-party banks to obtain copies of the three checks in question. The production took some time, but when Iselin's counsel discovered that in fact two of the checks were payable to "Sid Green" and one was payable to "Sid Green/Caesar," they withdrew Iselin's fraud claim and its request for punitive damages.

*Motion to Amend the Complaint*

Iselin has moved to amend its complaint to (a) drop the fraud claim (fourth claim); (b) replead the statutory and conversion claims (first and third claims) as one claim for monies had and received; and (c) proceed with the originally asserted claim for fraudulent conveyances (second claim). For the reasons set forth below, Iselin is permitted to drop its fraud claim and proceed with the fraudulent conveyance claim, but is denied its request to state a new claim for monies had and received.

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings should be freely given when justice so requires. However, the Supreme Court has stated that leave to amend should not be granted where there exists undue delay, bad faith or dilatory notice on the part of the mover, undue prejudice to the opposing party, and futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1982).

At least three of these factors are present here. First, there has been undue delay. Although Iselin learned of first claim's invalidity as early as August 1987, it waited a full year before moving to amend its complaint to remedy this defect. Second, there is evidence of bad faith. Iselin seeks to merge its statutory and conversion claims—both of which are barred by a three-year statute of limitations—into a

**1092**

claim for monies had and received, which has a six-year statute of limitations. Third, the defendants would be prejudiced by the proposed amendment. The defendants already have expended considerable time and money to establish that Iselin's statutory and conversion claims do not state a cause of action. To permit Iselin at this stage to convert those invalid claims to a claim for monies had and received would require the defendants to expend further resources defending against a new legal theory.

*Conclusion*

For the reasons set forth above, Iselin's first, third, and fourth claims are dismissed, Iselin's counsel is required to pay the defendants the costs and attorneys fees they incurred defending against the first claim, and Iselin's request to amend its complaint to drop its fourth claim and retain its second claim is granted, but its request to add a claim for monies had and received is denied. Settle judgment on notice.

It is so ordered.